[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 541.]

SELANDER ET AL., APPELLEES, *v.* ERIE INSURANCE GROUP ET AL.; ERIE INSURANCE EXCHANGE, APPELLANT.

[Cite as *Selander v. Erie Ins. Group*, 1999-Ohio-287.]

*Insurance—Underinsured motorist claim—Motor vehicles—Provisions of R.C. 3937.18 apply to policy of primary insurance that provides coverage for claims of liability arising out of the use of hired or non-owned automobiles, but is not issued for delivery with respect to some particular motor vehicle.*

(Nos. 98-289 and 98-494—Submitted January 13, 1999—Decided June 2, 1999.)

APPEAL from and CERTIFIED by the Court of Appeals for Darke County, No. 97CA1432.

––––––––––––––

{¶ 1} On November 14, 1992, Eugene Selander was killed, and his brother Glenn R. Selander seriously injured, when their pickup truck was involved in an accident with another car. It was determined that the accident was caused by the negligence of the driver of the other car, David L. Clark. Betty L. Selander, Eugene's widow and the administrator of his estate, as well as Glenn Selander and his wife, each settled all claims against Clark's liability insurer for $103,500.

{¶ 2} At the time of the collision, Glenn and Eugene Selander were electricians involved in a partnership known as Twin Electric and were working in the course and scope of their business activities. The 1980 Ford pickup truck they occupied was listed as a covered automobile in a Pioneer Commercial Auto Policy issued to Twin Electric by Erie Insurance Company. The policy included uninsured/underinsured motorist coverage in the amount of $300,000 per accident. As a result, Betty received a $200,000 settlement, and Glenn and his wife received a $100,000 settlement. Glenn Selander and his wife were also covered under a separate auto insurance policy issued by Erie Insurance Company that included

uninsured/underinsured coverage. Under this policy, Glenn and his wife received $100,000.

{¶ 3} Thereafter, appellees filed a claim for underinsured motorist benefits under a Fivestar General Business Liability Policy issued by appellant Erie Insurance Exchange ("Erie") to Twin Electric. The policy contained protection limits of $1 million per occurrence and $2 million policy aggregate. Erie refused to pay, asserting that the Fivestar policy did not provide automobile liability coverage or uninsured/underinsured motorist coverage.

{¶ 4} Appellees filed a declaratory action seeking underinsured motorist benefits under the Fivestar policy. The trial court granted summary judgment in the appellees' favor, holding that they were entitled to underinsured motorist coverage under the Fivestar policy. The court of appeals affirmed, holding that the Fivestar policy constituted an automobile or motor vehicle liability policy subject to R.C. 3937.18. Finding its judgment in conflict with the Tenth District Court of Appeals' decision in *Mauler v. Westfield Ins. Co.* (Sept. 28, 1989), Franklin App. Nos. 88AP-914 and 88AP-915, unreported, 1989 WL 112342, the court of appeals entered an order certifying a conflict.

{¶ 5} The cause is now before this court upon our allowance of a discretionary appeal and upon our determination that a conflict exists.

———————————

*Dynes & Garbig Co., L.P.A.,* and *Craig A. Dynes*, for appellees Betty L. Selander and Twin Electric.

*Goubeaux & Goubeaux* and *Eric H. Brand,* for appellees Glenn R. Selander and Twin Electric.

*Nemeth, Caborn & Butauski, John C. Nemeth* and *David A. Caborn,* for appellant.

*Buckingham, Doolittle & Burroughs, L.L.P.*, and *Christopher C. Esker*, urging reversal for *amicus curiae*, Ohio Insurance Institute.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 6} The court of appeals certified the following issue for our determination: "Do the provisions of R.C. 3937.18 apply to a policy of primary insurance which provides coverage for claims of liability arising out of the use of hired or non-owned automobiles, but is not issued for delivery with respect to some particular motor vehicle?" For the reasons that follow, we answer "Yes" to the foregoing issue.

{¶ 7} R.C. 3937.18(A) provides in part, "No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state," unless both uninsured and underinsured motorist coverage are provided.

{¶ 8} The Fivestar policy cover reads "Fivestar General Liability Policy (excluding automobile)." A portion of the policy also provides liability coverage for accidents involving "hired" or "non-owned" automobiles. The relevant language, found in the "Extension of Coverage" section of the policy, states:

"X  Non-Owned Automobile and Hired Automobile Liability Insurance

"Hired Automobile Liability

"We will pay all sums which anyone we protect becomes legally obligated to pay as damages because of personal injury or property damage arising out of the maintenance or use of hired automobiles by you or your employees in the course of your business.

"Non-Owned Automobile Liability

"We will pay all sums which anyone we protect becomes legally obligated to pay as damages because of personal injury or property damage arising out of the use of any non-owned automobile in your business by any person other than you.

" * * *

" 'Hired automobile' means any automobile you lease, hire or borrow. This does not include any automobile you lease, hire, or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

" 'Non-owned automobile' means any automobile you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership, a non-owned automobile does include any automobile owned by or registered in the name of a partner, but only while such automobile is being used in your business."

{¶ 9} This portion of the policy was marked by an "X," indicating that by the policy's own terms it was an "XTRA PROTECTION FEATURE." According to the policy, "[w]herever an 'X' appears in the margin of this policy, you receive XTRA PROTECTION, either as additional coverage or as a coverage that is not in most commercial general liability policies."

{¶ 10} Erie makes several arguments. First, Erie contends that R.C. 3937.18(A) cannot apply to the Fivestar policy because the policy was not "issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state." Rather, Erie argues that the policy provided coverage only for claims of vicarious liability arising out of the use of unspecified "hired" or "non-owned" automobiles. Erie relies on *Mauler v. Westfield Ins. Co.* (Sept. 28, 1989), Franklin App. Nos. 88AP-914 and 88AP-915, unreported, 1989 WL 112342, where the Tenth District Court of Appeals held that a policy that insured an employer's "non-ownership vehicle and hired auto liability insurance coverage" did not provide uninsured/underinsured coverage because the policy was not issued for

delivery with respect to any motor vehicle registered or principally garaged in Ohio under R.C. 3937.18. The court held that "the policy must be issued with respect to some particular motor vehicle."

{¶ 11} However, the court below, quoting *Speelman v. Motorists Mut. Ins. Co.* (Dec. 22, 1995), Montgomery App. No. 15362, unreported, 1995 WL 765979, held that an insurance company's " 'attempt to distinguish non-owned or hired vehicles from owned or specifically described vehicles "runs counter to well-established Ohio law." ' " *Speelman* was the owner of a sole proprietorship who had purchased business insurance containing "business auto coverage" from Motorists Mutual Insurance Company. Testimony revealed that the purpose of the policy was " 'to protect the insured against its vicarious liability or liability imputed to it because of negligent use of a hired or nonowned automobile.' " The court concluded that "R.C. 3937.18 does not distinguish between commercial and consumer automobile or motor vehicle liability policies" and that the Motorists Mutual policy extended liability coverage to Speelman. Therefore, Motorists was obligated to offer uninsured and underinsured coverage under R.C. 3937.18. We agree with the rationale set forth in *Speelman*. Erie admits that the Fivestar policy provides automobile liability coverage, albeit in the limited circumstance of providing coverage for claims of vicarious liability arising out of the use of a hired vehicle or non-owned vehicle. Where motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided. See, *e.g., Goettenmoeller v. Meridian Mut. Ins. Co.* (June 25, 1996), Franklin App. No. 95APE11-1553, unreported, 1996 WL 362089; *House v. State Auto. Mut. Ins. Co.* (1988), 44 Ohio App.3d 12, 540 N.E.2d 738. Under R.C. 3937.18, uninsured/underinsured coverage arises even though a liability policy refers only to "hired" or "non-owned" automobiles and fails to identify specific vehicles. *Speelman*. In this case, the contract expressly provided liability coverage for "non-owned" vehicles. Under the specific language of the policy, "if you are a

partnership a non-owned automobile does include any automobile owned by or registered in the name of a partner, but only while such automobile is being used in your business." There is no question that the 1980 Ford pickup truck occupied by the Selanders was an automobile owned by a partner and was being used in the partnership's business. The fact that a policy provides liability coverage for non-owned and hired motor vehicles is sufficient to satisfy the requirement of R.C. 3937.18 that a motor vehicle liability policy be delivered in this state with respect to any motor vehicle registered or principally garaged in this state. Thus, we find R.C. 3937.18 applicable to the Fivestar policy in this case.

{¶ 12} Next, Erie argues that R.C. 3937.18 has no application to the Fivestar policy because the policy would not have been approved for issuance or delivery under Ohio's financial responsibility law, R.C. Chapter 4509. Erie points out that Eugene Selander would not have been entitled to liability coverage at the time of the accident had he caused the accident. This is because the policy provided "non-owned" liability protection only when an insured becomes legally obligated to pay damages "arising out of the use of any non-owned automobile in your business by *any person other than you*." (Emphasis added.) The policy defined "You" in part as the "named insured[s]" under the policy, identified as Twin Electric, Glenn Selander, and Gene Selander.

{¶ 13} However, *Speelman* held that the fact that an insurance policy did not comply with Ohio's financial responsibility law, R.C. Chapter 4509, was not indicative of its status as an "automobile liability" or "motor vehicle liability" policy. The *Speelman* court based its rationale on the Arizona Supreme Court decision in *St. Paul Fire & Marine Ins. Co. v. Gilmore* (1991), 168 Ariz. 159, 812 P.2d 977. In that case, Sharon Gilmore's car was hit by another driver, while Sharon was driving her own vehicle in the course of her employment. She sought underinsured motorist coverage under her employer's comprehensive general liability policy, which included language covering non-owned automobiles. The

policy did not offer underinsured motorist coverage. The court held that a comprehensive liability insurance policy that includes automobile liability coverage is an "automobile liability" or "motor vehicle liability" policy. Construing a statute similar to Ohio's, the Arizona court found the insurer was obligated to offer underinsured motorist coverage. The court reached this conclusion despite the policy's failure to meet the requirements of Arizona's financial responsibility law. The *Gilmore* court explained: "[T]he type of policy is determined by the type of coverage provided, not by the label affixed by the insurer. Otherwise, it would be a simple matter for insurers to evade the requirements of Arizona law by changing the title of the policy. * * * Therefore, the fact that [the] policy is labeled as a comprehensive general liability policy does not mean it is not also an automobile liability policy under the [Uninsured Motorist Act]." *Id.* at 165, 812 P.2d at 983.

{¶ 14} Furthermore, in *Demetry v. Kim* (1991), 72 Ohio App.3d 692, 595 N.E.2d 997, the Tenth District Court of Appeals rejected the argument that to qualify for "implied underinsured coverage[,] appellant's decedent must first fit within the liability coverage afforded by the policy." The court held that "there is nothing, absent clear language evidencing an intent to do so, to prevent uninsured/underinsured coverage from being broader than liability coverage." *Id.* at 698, 595 N.E.2d at 1001. Therefore, the fact that the Fivestar policy would not comply with the mandates of R.C. Chapter 4509 does not conclusively demonstrate that the policy was never intended to provide uninsured/underinsured motorist coverage.[1]

---

1. Pursuant to Am.Sub.H.B. No. 261, enacted effective September 3, 1997, R.C. 3937.18(L) now defines "automobile liability or motor vehicle liability policy of insurance" as either "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance; (2) Any umbrella liability policy of insurance." However, this version of R.C. 3937.18 was not in effect at the time of the Selanders' accident and thus is inapplicable.

**{¶ 15}** Erie claims that the policy's title of "Fivestar General Liability Policy (excluding automobile)" indicates that it was never intended to provide automobile coverage. However, as recognized in *Gilmore*, "the type of policy is determined by the type of coverage provided, not by the label affixed by the insurer." *Gilmore* at 165, 812 P.2d at 983. Regardless, Erie itself admits that automobile liability coverage was intended in limited circumstances, which is sufficient to give rise to uninsured/underinsured coverage.

**{¶ 16}** Finally, Erie asserts that the Fivestar policy was never intended to provide uninsured/underinsured motorist coverage as demonstrated by the fact that the Selanders obtained uninsured/underinsured motorist coverage through Erie's Pioneer Commercial Automobile policy. However, contrary to appellant's argument, the fact that the Selanders had obtained uninsured/underinsured coverage through a separate policy in no way indicates that they did not intend to obtain additional coverage under the Fivestar policy. See *Speelman*.

**{¶ 17}** Under the policy's language, the pickup truck occupied by the Selanders at the time of the collision qualified as a "non-owned" vehicle. Given the determination that the Fivestar policy qualifies as an "automobile liability or motor vehicle policy" under R.C. 3937.18, the policy was required to offer uninsured/underinsured coverage. *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429. Since it did not, coverage arose by operation of law in the amount equal to the liability coverage of the policy, and appellees are entitled to compensation under the Fivestar policy.

**{¶ 18}** Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

LUNDBERG STRATTON, J., dissents.

———————————

**COOK, J., dissenting.**

{¶ 19} I respectfully dissent. I subscribe to the analysis of the issue as found in the case that presents the conflict, *Mauler v. Westfield Ins. Co.* (Sept. 28, 1989), Franklin App. Nos. 88AP-914 and 88AP-915, unreported, 1989 WL 112342.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 20} Once again, the majority of this court expands the scope of uninsured/underinsured ("UM/UIM") motorist coverage as mandated by R.C. 3937.18 and further erodes the contractual nature of the relationship between an insurer and insured. The majority now finds a business liability policy the basis for UM/UIM coverage for company vehicles despite the fact that the policy expressly excludes this type of automobile coverage.

{¶ 21} Twin Electric, a business belonging to two brothers who work as electricians, purchased the Fivestar General Business Liability Policy to provide liability coverage for its business operations. Twin Electric also had a Pioneer Commercial Automobile Policy to provide liability coverage, including UM/UIM coverage, for company vehicles. Although the Fivestar policy specifically excluded liability coverage for company vehicles, a portion of the policy did cover "hired" or "non-owned" vehicles that may be used during the operation of the business. With respect to the "hired" or "non-owned" vehicles, the Fivestar policy agreed to pay "all sums which anyone we protect becomes legally obligated to pay as damages because of personal injury or property damage arising out of" the use of these vehicles, *i.e.,* vicarious liability. When vicarious liability is at issue, the insured is *not* seeking compensation for damages. Instead, the insured is legally liable for damages for injuries to another. Because the very premise of vicarious liability involves injury to one other than those protected by the insurance policy at issue, UM/UIM coverage does not apply in this situation and makes no sense.

{¶ 22} The basic premise of UM/UIM coverage is " 'to protect persons from losses that, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated.' " *Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 555, 668 N.E.2d 913, 915, quoting *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 440. The majority concedes that Twin Electric had an automobile liability policy with matching UM/UIM coverage of $300,000 per accident. Glenn Selander also had personal automobile insurance coverage. These plaintiffs received compensation from at least three sources: the tortfeasor's policy, the Twin Electric automobile liability policy, and Glenn Selander's personal policy. It cannot be argued that the purpose of R.C. 3937.18 was not met and these plaintiffs were uncompensated for their losses.

{¶ 23} As a result of today's opinion, any commercial liability policy that also provides limited liability coverage for vehicles under certain circumstances will provide an extra source of UM/UIM coverage, regardless of any applicable policy exclusions. The majority has opened a Pandora's box. This opinion will overwhelmingly reach every existing company policy.

{¶ 24} Therefore, I would adhere to the sound reasoning and common sense of the court in *Mauler v. Westfield Ins. Co.* (Sept. 28, 1989), Franklin App. Nos. 88AP-914 and 88AP-915, unreported, 1989 WL 112342. Because I would answer "No" to the certified question before us, I respectfully dissent.

_____