OPINION
Nationwide Mutual Insurance Company ("Nationwide") appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of Bruce A. Jump on certain insurance coverage issues.
In 1998, Nationwide insured Electro-Line, Inc. ("Electro-Line") pursuant to three policies: a commercial automobile insurance policy ("automobile policy"), a commercial general liability insurance policy ("general liability policy"), and a commercial umbrella liability policy ("umbrella policy"). Jump was an employee of Electro-Line. On May 3, 1998, Jump was walking his bicycle across Far Hills Avenue in Dayton at approximately 1:00 a.m. when he was struck by a van. Jump sustained serious injuries. It is undisputed that Jump was not acting within the scope of his employment at the time of the accident and that the accident did not involve a vehicle owned or driven by Electro-Line or its employees.
Jump filed a complaint seeking $1 million in underinsured motorist coverage through each of Electro-Line's policies with Nationwide. None of the policies expressly provided for underinsured motorist coverage. Jump claimed, however, that pursuant to R.C. 3937.18(A), Nationwide had been required to offer underinsured motorist coverage when it delivered the policies and that, because Nationwide had not done so, such coverage had arisen by operation of law. Nationwide claimed that it had not been required to offer underinsured motorist coverage with any of the policies because none had satisfied the definition of "automobile liability or motor vehicle liability policy of insurance" set forth at R.C.3937.18(L). Each side filed a motion for summary judgment related to the insurance coverage issues. The trial court determined that Electro-Line's automobile policy and its umbrella policy were each "automobile liability or motor vehicle liability polic[ies] of insurance" and that Nationwide had been required to provide underinsured motorist coverage under these policies by operation of law because it had not offered such coverage before the policies were delivered. The trial court found, however, that Electro-Line's general liability policy was not an "automobile liability or motor vehicle liability policy of insurance" and that underinsured motorist coverage was not available to Jump under that policy.
Nationwide raises three assignments of error on appeal. Jump has not appealed from the trial court's determination that he was not entitled to coverage under the general liability policy.
 I. THE TRIAL COURT ERRED IN CONCLUDING THAT NATIONWIDE MUTUAL INSURANCE COMPANY HAD AN OBLIGATION TO OFFER UNINSURED/UNDERINSURED COVERAGES WITH THE COMMERCIAL AUTO COVERAGE FORM THAT IT ISSUED TO ELECTRO-LINE.
Nationwide contends that the trial court erred in concluding that the automobile and umbrella policies it had issued to Electro-Line were the types of policies with which it had been required to offer uninsured and underinsured motorist coverage.
The relevant statutory provisions are as follows. R.C. 3937.18(A) provides:
 (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:
(1) Uninsured motorist coverage * * *.
(2) Underinsured motorist coverage * * *.
Pursuant to R.C. 3937.18(L), the term "automobile liability or motor vehicle liability policy of insurance" means either of the following:
 (1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by [R.C. 4509.01(K)], for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 (2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section.
Proof of financial responsibility is defined as "proof of ability to respond in damages [in specified amounts] for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle." R.C. 4509.01(K).
The trial court concluded that Electro-Line's automobile policy was an "automobile liability policy" because it provided liability coverage. The trial court did not address the definition of an "automobile liability or motor vehicle liability policy of insurance" set forth at R.C.3937.18(L). Instead, it seems to have relied on the broad definition of an "automobile liability or motor vehicle liability policy of insurance" adopted by the supreme court in Selander v. Erie Ins. Group (1999),85 Ohio St.3d 541, and in other cases that predated the enactment of House Bill 261. House Bill 261 amended R.C. 3937.18 to include subsection (L).
The trial court found that coverage under the umbrella policy flowed from coverage under the automobile policy. In other words, if Nationwide was required to provide uninsured and underinsured motorist coverage under the automobile policy, then it was also required to provide uninsured and underinsured motorist coverage under the umbrella policy, which specifically identified the automobile policy as one of "the underlying insurances." We agree with this interpretation. See R.C.3937.18(L)(2). Thus, we will focus our analysis on the coverage required under the automobile policy.
R.C. 3937.18(L)(1) significantly narrows the scope of policies that must include uninsured and underinsured motorist coverage when compared with the supreme court's interpretation of the previous version of the statute. See, e.g., Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660. R.C. 3937.18(L)(1) defines an automobile liability or motor vehicle liability policy of insurance as a policy that serves as proof of financial responsibility for owners or operators of motor vehicles specifically identified in the policy of insurance. InScott-Pontzer, the supreme court held that the definition of an insured under a commercial insurance policy includes employees of the company, even if those employees are acting outside the scope of their employment, unless the policy expressly limited such coverage. Nationwide's automobile policy did not limit such coverage. Accordingly, the automobile policy purchased by Electro-Line provided proof of Jump's ability to respond in damages for liability on account of accidents arising out of the ownership, maintenance, or use of a motor vehicle, at least in some circumstances. In other words, the policy did provide proof of financial responsibility as defined in R.C. 4509.01(K) for Electro-Line employees. R.C. 3937.18(L), however, further limits the definition of an automobile liability or motor vehicle liability policy of insurance by providing that the proof of financial responsibility provided by the policy must be for owners or operators of the motor vehicles specifically identified in the policy. The Nationwide automobile policy did not specifically identify any motor vehicles. Rather, it provided coverage only for "hired" and "non-owned" automobiles. Jump claims that there is no distinction between hired and non-owned automobiles and those specifically described on the declarations page of a policy. We disagree.
As Jump points out in his brief, the words in an insurance policy must be given their plain and ordinary meaning. Blue Cross Blue Shield Mut. ofOhio v. Hrenko (1995), 72 Ohio St.3d 120, 122. The general categories of hired and non-owned vehicles do not qualify as "specifically identified" vehicles using the plain and ordinary meaning of those terms. Moreover, Jump's claim that the supreme court has held that there is no distinction between insurance for hired and non-owned vehicles and insurance for specifically described vehicles is unpersuasive. Selander,85 Ohio St.3d 541, the case upon which Jump relies, was decided before R.C. 3937.18(L) had been enacted. Selander held that the previous version of R.C. 3937.18 required insurance companies to offer uninsured and underinsured motorist coverage with policies that offered liability coverage on hired and non-owned automobiles as well as with policies that offered liability coverage on specifically identified vehicles. Selander
does not support the proposition that "hired" and "non-owned" vehicles qualify as "specifically identified" vehicles under the post-House Bill 261 version of R.C. 3937.18.
Because Electro-Line's automobile policy with Nationwide did not specifically identify any motor vehicles, it did not satisfy the R.C.3937.18(L) definition of an automobile liability or motor vehicle liability policy of insurance. Thus, Nationwide was not required to offer uninsured or underinsured motorist coverage as part of the policy. Accordingly, the trial court erred in concluding that such coverage arose by operation of law due to Nationwide's failure to offer such coverage when the policy was delivered. Jump was not entitled to uninsured or underinsured motorist coverage under Electro-Line's automobile policy.
The first assignment of error is sustained.
 II. THE TRIAL COURT ERRED IN CONCLUDING THAT NATIONWIDE MUTUAL INSURANCE COMPANY HAD AN OBLIGATION TO OFFER UNINSURED/UNDERINSURED COVERAGES WITH THE COMMERCIAL UMBRELLA LIABILITY POLICY THAT IT ISSUED TO ELECTRO-LINE.
As we discussed supra, Jump's right to uninsured or underinsured motorist coverage under the umbrella policy, if any, flowed from his right to coverage under the automobile policy. See R.C. 3937.18(L)(2). Because we have concluded that Nationwide was not required to offer such coverage under the automobile policy, it also was not required to offer such coverage under the umbrella policy.
The second assignment of error is sustained.
 III. THE TRIAL COURT ERRED IN CONCLUDING THAT BRUCE JUMP, JR. QUALIFIES AS AN INSURED UNDER THE COMMERCIAL UMBRELLA LIABILITY POLICY.
Pursuant to App.R. 12(A)(1)(c), we will not address this assignment of error as it is rendered moot by our dispositions of the other two assignments of error.
The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings in accordance with this opinion.
FAIN, J. and GRADY, J., concur.