OPINION
{¶ 1} This appeal arises from a declaratory judgment action originally filed by Denise, Mark, and Matthew Lane (the Lanes) against State Auto Insurance Companies. The complaint alleged that Denise had been injured in an auto accident, and was paid $100,000 for her injures by the tortfeasor's insurance carrier. State Auto is the Lanes' own insurance carrier, and the underinsured motorist (UIM) policy limits are $50,000 per person and $100,000 per accident. In the complaint, the Lanes asked the court to award them an additional $100,000 in UIM benefits.
 {¶ 2} Subsequently, the Lanes filed an amended complaint adding various parties, including Ohio Mutual Insurance Group (OMIG). At the time of Denise's accident, OMIG insured Denise's employer, Martinos Talltales Inn, under a "special multi-peril" or commercial liability policy. The effective policy dates were September 18, 1998, through September 18, 1999, and policy limits were $2,000,000 (aggregate) for products and completed operations, and $1,000,000 for personal and advertising injuries.
 {¶ 3} Ultimately, OMIG filed a motion for summary judgment on the coverage issue. The gist of the motion was that the Lanes were not entitled to UIM benefits because the OMIG policy was a commercial property coverage policy, not an automobile liability policy. Therefore, OMIG claimed that it had no obligation to offer UIM coverage. In this regard, OMIG relied on the Ohio Supreme Court decision in Davidson v.Motorists Mut. Ins. Co., 91 Ohio St.3d 262, 2001-Ohio-36, which held that incidental coverage for off-road and other similar vehicles does not transform an insurance policy into a motor vehicle policy and does not trigger the duty to offer UIM coverage.
 {¶ 4} The trial court agreed with OMIG, and granted summary judgment in its favor. The Lanes now appeal, raising the following assignment of error:
 {¶ 5} "I. The trial court erred in ruling that the Ohio Mutual Insurance policy was not a "motor vehicle liability policy of insurance" and thus not subject to the statutory provisions of Ohio Revised Code Section 3937.18.
 {¶ 6} After considering the assignment of error, we find it without merit. Accordingly, the trial court judgment will be affirmed.
 I {¶ 7} In their brief, the Lanes present two issues for review. The first issue is whether the Talltales Inn policy is a "motor vehicle liability policy of insurance" requiring OMIG to offer UIM coverage. The second issue is whether the trial court erred in finding that the insurance policy was not subject to the statutory provisions of R.C.3937.18. However, the Lanes did not separate the argument in their brief. As a result, we will consider both points together.
 {¶ 8} To resolve questions of insurance coverage, we apply the statutory law in effect when the parties enter into a contract of insurance. Ross v. Farmers Ins. Group of Companies, 82 Ohio St.3d 281,1998-Ohio-381, syllabus. As we mentioned, the policy in the present case was issued on September 18, 1998. At that time, insurers were prohibited from issuing or delivering any automobile or motor vehicle liability policy in Ohio unless they offered UIM coverage to persons insured under the policy. R.C. 3937.18(A)(2). Under the statute as it then existed, "automobile liability or motor vehicle liability policy" meant: "[a]ny policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance." R.C.3937.18(L)(1). In turn, R.C. 4509.01(K), defined proof of financial responsibility as: "proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle."
 {¶ 9} On the OMIG policy, the sole named insured is Martinos Talltales Inn, which is a restaurant. Various principal coverages apply, including bodily injury/damages, products/completed work, and personal injury/advertising injury. Other supplemental coverages are included, like contractual liability, incidental medical malpractice injury, and mobile equipment. The policy does not define "mobile equipment." However, it does provide coverage for a restricted group of land vehicles, such as those used only on premises (including adjoining ways) owned or rented to the named insured; vehicles designed primarily for off-road use, and vehicles on crawler treads. The policy also excludes coverage for bodily injury connected to autos owned, operated by, rented to, or loaned to an insured, except parking of autos in certain limited situations.
 {¶ 10} In finding that the OMIG policy was not an automobile liability policy, the trial court relied on our decision in Jump v.Nationwide, Montgomery App. No. 18880, 2001-Ohio-1699, 2001 WL 1345954. In Jump, we noted that R.C. 3937.18(L) limits the definition of automobile liability policy by requiring vehicles to be "specifically identified." 2001 WL 1345954, *3. We additionally said in Jump that general categories of "hired" and "non-owned" automobiles do not qualify as "specifically identified" vehicles under R.C. 3937.18(L)(1). Id. The trial court applied this reasoning, i.e., the court found that the OMIG policy was not an automobile liability policy because no vehicles were specially identified.
 {¶ 11} The Lanes claim that the trial court erred in relying onJump. They first point out that only one appellate court has cited Jump.
They also note that the Tenth District Court of Appeals has rejected the position we took in Jump. However, even if this is true, we see no reason to change our position.
 {¶ 12} As a preliminary point, our research reveals that three other districts agree with the position we took in Jump. Specifically, the Fifth, Sixth, and Ninth District Courts of Appeals have all found that vehicles must be specifically identified before UIM coverage will arise. See Pickett v. Ohio Farmers Insurance Co., Stark App. Nos. 2001CA00227 and 2001CA00236, 2002-Ohio-259, 2002 WL 54698, appeal allowed (2002), 95 Ohio St.3d 1473; Gilcreast-Hill v. Ohio Farmers InsuranceCo., Summit App. No. 20983, 2002-Ohio-4524, and Devore v. Richmond, Wood App. No. WD-01-044, 2002-Ohio-3965.
 {¶ 13} In Pickett, a general liability policy provided incidental coverage for a narrow class of mobile equipment and did not list any specifically identified vehicles. Accordingly, the Fifth District found that the policy was not a "motor vehicle liability policy." 2002 WL 54698, *3.
 {¶ 14} Similarly, in Gilcreast-Hill, the Ninth District considered a policy provision that excluded coverage for autos, except non-owned, non-rented, or non-loaned autos that were parked on the insured premises or on ways adjoining the premises. 2002-Ohio-4524, ¶ 20. This is like the coverage afforded in the present case, i.e., the OMIG policy says it will not pay for "bodily injury, property damage, personal injury, and advertising injury that arises out of the ownership, operation, occupancy, renting, loaning, supervision, maintenance, use, entrusting, loading or unloading of an auto, aircraft, watercraft, or mobile equipment owned by, operated by, rented to, or loaned to any insured." The policy then provides that this exclusion does not apply to "* * * `[t]he parking of an auto on premises owned by, rented to, or controlled by you or on the ways immediately adjoining if the auto is not owned by or rented to or loaned to you or the insured.'"
 {¶ 15} The Ninth District found that the phrase "`not owned by or rented or loaned to you or the insured'" did not specifically identify autos and that the policy, therefore, could not serve as proof of financial responsibility as defined by R.C. 3937.18. 2002-Ohio-4524, ¶ 28. In reaching this conclusion, the court was specifically persuaded by our decision in Uzhca v. Denham, Montgomery App. 19106, 2002-Ohio-1814, and by the Sixth District decision in Devore. Id. Notably, Uzhca cited and applied our prior decision in Jump. 2002-Ohio-1814, ¶ 57.
 {¶ 16} The Ninth District also explicitly rejected the reasoning of the Tenth District Court of Appeals on this issue as "unpersuasive."Gilcreast-Hill, 2002-Ohio-4524, ¶ 23. Previously, in Davis v. StateFarm Fire and Cas. Co., Franklin App. No. 00AP-1458, 2001-Ohio-8884, 2001 WL 1607089, the Tenth District had considered whether UIM coverage might exist under a homeowner's policy that extended automobile liability coverage for bodily injury to residence employees. 2001 WL 1607089, *7-8. However, the Tenth District did not reach this issue, because it could not verify the correct date of the policy. Since changes had taken place in the law during potential policy periods, the Tenth District remanded the case for clarification on when the policy term began. Id. at *7.
 {¶ 17} Nonetheless, even though the case was being remanded, the Tenth District decided to comment on and distinguish Jump. In this regard, the Tenth District observed that:
 {¶ 18} "In this case, by contrast (to Jump), the policy specifically identifies motor vehicles owned or operated by or rented or loaned to appellant as being covered under the exception to the exclusion applying to residence employees. We do not believe, by using the word `specified,' that the legislature intended to require makes, models, and serial numbers." Id. at *8.
 {¶ 19} Obviously, the Tenth District's decision in Davis is not binding on us. Moreover, the court's comments were unnecessary to the decision, since the case was simply being remanded for resolution of the appropriate policy period. However, even if these facts were otherwise, the Tenth District did not provide us with a persuasive argument for changing the view we expressed in Jump.
 {¶ 20} The Lanes' next argument is that Jump is distinguishable. This claim hinges on the fact that Jump involved "hired" and "non-owned" automobiles, whereas the Lanes' policy allegedly provides coverage for operation and use of "an auto * * * or mobile equipment owned by, operated by, rented to, or loaned to any insured" (citing from the Lanes' brief).
 {¶ 21} After examining the policy, we cannot find the precise wording cited in the Lanes' brief. As we mentioned earlier, the OMIG policy is a commercial liability policy and provides several types of coverages, including supplemental coverages. One supplemental coverage is for mobile equipment, which is not defined by the policy. Concerning mobile equipment, the policy says that:
 {¶ 22} "1. This coverage applies only to land motor vehicles that meet one or more of the following criteria: a. Those which are used only on premises owned by or rented to you (premises including adjoining ways). b. Those which are designed primarily for use off public roads. c. Those which travel on crawler treads. d. Those which are self-propelled and designed or used only to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle: (1) power cranes, shovels, loaders, diggers, or drills; (2) concrete mixers (this does not include the mix-in-transit type); and (3) graders, scrapers, rollers, and other road construction or repair equipment. e. Those which are not self-propelled, but are used primarily to afford mobility to the following types of equipment permanently attached thereto: (1) air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment); (2) geophysical exploration, lighting, and well servicing equipment; and (3) cherry pickers and similar devices used to raise or lower workers."
 {¶ 23} Elsewhere in the policy, "auto" is defined as "a land motor vehicle, a trailer, or a semi-trailer, which is designed for use on public roads."
 {¶ 24} While the mobile equipment section of the policy uses the words "land motor vehicle," the types of vehicles listed are clearly not designed to transport people on public roads. In this context, the Ohio Supreme Court stressed in Davidson that a policy does not provide "motor vehicle liability coverage" when it includes incidental coverage for a narrow class of motorized vehicles that "are not subject to motor vehicle registration and are designed for off-road use or are used around the insured's property." 91 Ohio St.3d at 267. Accordingly, the fact that OMIG's policy includes coverage for mobile equipment does not convert it into a motor vehicle liability policy. The only other section that potentially applies is found in "Exclusions." As we noted above, the policy excludes liability connected with autos "owned by, operated by, rented to, or loaned to any insured." One exception is for non-owned, non-rental, and non-loaned autos that are parked on the insured premises or ways immediately adjoining.
 {¶ 25} Although this exception identifies a general category of automobiles, it does not specifically identify any vehicle. Significantly, in Uzhca, we considered a very similar provision and found that the policy was not an automobile liability or motor vehicle liability policy. Uzhca, 2002-Ohio-1814, at ¶¶ 54-55. In particular, we noted that:
 {¶ 26} "[T]he very language of the policy makes clear that it is not designed to provide proof of financial responsibility for any automobile. It excludes liability coverage for automobiles, and the exception to that exclusion specifies that it only covers parking of automobiles on the insured's property if those automobiles are not owned by the insured. Furthermore, the policy does not provide liability insurance with respect to any vehicles `specifically identified in the policy of insurance' as required by R.C. 3937.18(L)(1). Therefore, it does not, as required by the statute `serve as proof of financial responsibility * * * for owners or operators of the motor vehicles specifically identified in the policy of insurance.' It does not serve as proof of financial responsibility for owners or operators of any vehicle at all." Id. at ¶ 55.
 {¶ 27} In view of the similarity in policy provisions, we must reach the same conclusion in the present case. There is simply no indication that the OMIG policy was an automobile liability or motor vehicle liability policy as we have interpreted that term. One other exception is provided in the Exclusion section of the OMIG policy. This exception applies to "bodily injury or property damage that arises out of autos or mobile equipment covered under Mobile Equipment Coverage." Again, however, the vehicles covered by the mobile equipment section are not designed to transport people on public roads. Consequently, we see no basis for distinguishing Jump nor do we see any reason to impute coverage under R.C. 3937.18.
 {¶ 28} As support for their claims, the Lanes also rely onShropshire v. EMC/Hamilton Mut. Ins. Co. (Oct. 5, 2001), Montgomery App. Nos. 18803, 18814, 2001 WL 1173334. According to the Lanes, Shropshire
stands for the proposition that where a policy of insurance provides coverage in even a few circumstances, it should be classified as an automobile liability insurance policy for purposes of R.C. 3937.18. We did make such a comment in Shropshire. See 2001 WL 1173334, *2. However, our remark was based on the factual circumstances of that case, which involved a policy covering "garage operations," and included "ownership, maintenance, or use" of covered autos. Id. In this regard, we found that this "form of coverage, albeit limited, nevertheless classifies the policy as an automobile liability policy." However, Shropshire is not pertinent, as the present case does not involve garage operations, nor are there any "covered autos."
 {¶ 29} As we have already noted, the OMIG policy does not include coverage for autos designed to transport people on the roadways. Therefore, there is no reason for coverage to arise by operation of law. As an additional matter, Shropshire appears to have been decided under a prior version of R.C. 3937.18. While Shropshire did not cite a particular version of the UIM statute, it did rely on the Ohio Supreme Court decision in Selander v. Erie Insurance Group, 85 Ohio St.3d 541,1999-Ohio-287. See Shropshire, 2001 WL 1173334, *2-3.
 {¶ 30} Selander was decided under an earlier version of the UIM statute, and has since been explained by the Ohio Supreme Court, as follows:
 {¶ 31} "In Selander, we were construing a general business liability policy that expressly provided insurance against liability arising out of the use of automobiles that were used and operated on public roads. Since there was express automobile liability coverage arising out of the use of these automobiles, we reasoned that UM/UIM coverage was required. That holding comports with the requirement under R.C. 3937.18
that UM/UIM coverage must be offered where the policy is an automobile or motor vehicle liability policy. In contrast, the policy at issue in this case is a homeowner's policy that does not include coverage for liability arising out of the use of motor vehicles generally. Instead, the homeowner's policy provides incidental coverage to a narrow class of motorized vehicles that are not subject to motor vehicle registration and are designed for off-road use or are used around the insured's property.
 {¶ 32} "These distinctions are significant. Clearly, the policy inSelander was deemed an automobile liability or motor vehicle policy precisely because there was express liability coverage arising from the use of automobiles. Furthermore, automobiles, unlike the vehicles listed in the homeowner's policy in this case, are subject to motor vehicle registration and are designed for and are used for transporting people on a public highway. Thus, based on these distinctions, it makes perfect sense to allow UM/UIM coverage in Selander but to restrict recovery under a homeowner's policy that provides incidental coverage for a very limited class of motorized vehicles that are neither subject to motor vehicle registration nor designed to be used on a public highway.
 {¶ 33} "Moreover, we never intended Selander to be used to convert every homeowner's policy into a motor vehicle liability policy whenever any incidental coverage is afforded for some specified type of motorized vehicle. Instead, Selander stands only for the proposition that UM/UIMcoverage is to be offered where a liability policy of insurance expresslyprovides for coverage for motor vehicles without qualification as todesign or necessity for motor vehicle registration." Davidson,91 Ohio St.3d 262, 267-68, 2001-Ohio-36 (emphasis added).
 {¶ 34} As we said, Selander did not involve the version of R.C.3937.18(L) that applies to the present case, and that restricts the definition of "automobile liability or motor vehicle liability policy" to a policy that serves as proof of financial responsibility." Selander,85 Ohio St.3d at 545, n. 1. See also, Uzhca, 2002-Ohio-1814, ¶ 57 (interpreting amended version of R.C. 3937.18(L) as superseding the holding in Selander, and requiring that a "policy provide proof of financial responsibility for some specific vehicles identified in the policy").
 {¶ 35} As a further argument for imputed coverage, the Lanes urge us to follow a common pleas court decision from Cuyahoga County. SeeMahoney v. Lemmerman (Jan 31, 2002), Cuyahoga Cty. C.P. 428982, unreported. In Mahoney, the court considered a parking exception similar to the one involved in this case. Because the exception covered autos parked on the "ways next to premises" owned by the insured, the court inferred that the policy contemplated operation of a motor vehicle on a public highway. Therefore, the court implied UIM coverage by operation of law. Slip. op., p. 6.
 {¶ 36} Based on our prior decisions in Jump and Uzhca, we disagree with Mahoney. Notably, in Uzhca, we considered a parking provision that is the same, in all relevant respects, as the provision discussed inMahoney. Unlike Mahoney, we found that "the very language of the policy makes clear that it is not designed to provide proof of financial responsibility for any automobile." 2002-Ohio-1814, ¶ 55. Again, we see no reason to change our position.
 {¶ 37} The Lanes' final argument in favor of coverage is based on a policy provision dealing with motor vehicle financial responsibility certification. In this regard, the "Conditions" section of the policy contains eight subsections, covering various points like subrogation, suit against the insurance company, misrepresentation, and so on. The fourth subsection is titled "Motor Vehicle Financial Responsibility Certification," and provides that:
 {¶ 38} "[w]hen Commercial Liability Coverage is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided for bodily injury liability or property damage liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law."
 {¶ 39} The Lanes contend that this subsection clearly identifies the policy as proof of financial responsibility for any motor vehicle financial responsibility law, and that UIM coverage should, therefore, be afforded. However, we disagree.
 {¶ 40} In the first place, the subsection does not say that the commercial liability coverage has, in fact, been certified as proof of financial responsibility, nor does it say that the coverage "serves" as proof of financial responsibility. See. R.C. 3937.18(L)(1). Instead, this subsection simply indicates that if the policy is certified, then the insurance will comply with the law. Thus, the provision in question is simply a general statement about what could happen in a certain context; it does not provide any type of coverage.
 {¶ 41} In Ohio, the need for "certification" arises in certain limited circumstances. For example, a person whose driver's license is suspended must comply with several requirements for reinstatement, including giving and maintaining proof of insurance. R.C. 4509.022. Proof may be furnished in various ways, including a bond, certificate of deposit, or certificate of insurance. See R.C. 4509.45. In the latter situation,
 {¶ 42} "[p]roof of financial responsibility may be furnished by filing with the registrar of motor vehicles the written certificate of any insurance carrier authorized to do business in this state certifying that there is in effect a motor-vehicle liability policy for the benefit of the person to furnish proof of financial responsibility. The certificate either shall state the expiration date of the policy, which date shall be not less than one year from the effective date of the certificate, or if no expiration date is stated in the certificate, then such policy shall not expire until canceled or terminated as provided in section 4509.57 of the Revised Code. The certificate shall also designate by explicit description or by appropriate reference all motor vehicles covered, unless the policy is issued to a person who is not the owner of a motor vehicle." R.C. 4509.46.
 {¶ 43} R.C. 4905.46 is consistent with R.C. 3937.18(L)(1), in that it contemplates specific identification of vehicles that are covered by the policy, or a specifically identified driver. However, as we implied, the "certificate" subsection in the Conditions Section of the OMIG policy is irrelevant, since it does not certify anything; instead, it merely says what will happen if a policy of insurance is certified. This is simply "boilerplate" language and does not provide any type of coverage.
 {¶ 44} Accordingly, based on the preceding discussion, the single assignment of error is overruled, and the trial court judgment is affirmed.
WOLFF, P.J., and YOUNG, J., concur.