OPINION
{¶ 1} Appellant Arnold Jett appeals the decision of the Stark County Court of Common Pleas that denied his motion for summary judgment and granted State Automobile Mutual Insurance Company's (State Automobile") motion for summary judgment. The following facts give rise to this appeal.
 {¶ 2} The Estates of Larry and Sandra Jett initiated this action following an accident on April 20, 2000, in which the Jetts suffered fatal injuries. The accident occurred, in the State of West Virginia, as Larry and Sandra Jett were traveling to visit Larry Jett's mother. A vehicle negligently operated by Christopher Farmer collided with the Jetts' vehicle. At the time of the accident, Larry Jett was driving a vehicle owned by Jett Roofing, Inc. ("Jett Roofing.") Larry and Sandra Jett were employed by Jett Roofing. Larry Jett was employed as a consultant and Sandra Jett was President and ninety percent owner of the business. Sandra Jett performed clerical and administrative duties for Jett Roofing.
 {¶ 3} On March 5, 2001, the Estates of Larry and Sandra Jett entered into a settlement agreement with the tortfeasor's liability carrier. The tortfeasor paid $100,000 to the Estate of Larry Jett and $100,000 to the Estate of Sandra Jett. On the date of the accident, Jett Roofing was a named insured under two policies of insurance. The first is a commercial automobile liability policy issued by Safeco — American Economy Insurance Company. The vehicle operated by Larry Jett, on the date of the accident, was listed as a covered vehicle in this policy. As a result of the accident, on June 6, 2001, Safeco issued checks to the Estates of Larry Jett and Sandra Jett in the amount of $81,000 and $54,000 as payment for wrongful death.
Jett Roofing is also a named insured under a Commercial General Liability Policy ("CGL") issued by State Automobile. The effective date of the policy was from May 24, 1999 to May 24, 2000. The policy provides a per occurrence limit of $200,000.
 {¶ 4} In his motion for summary judgment, Appellant Jett argued he is entitled to coverage, under the State Automobile policy, pursuant to Scott-Pontzer v. Liberty Mut. Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292; Ezawa v. Yasuda Fire Marine Ins. Co. of Am.,86 Ohio St.3d 557, 1999-Ohio-124; and Selander v. Erie Ins. Grp.,85 Ohio St.3d 541, 1999-Ohio-287. State Automobile responded that the CGL policy is not an automobile policy and Larry and Sandra Jett were not insureds under the policy.
 {¶ 5} In granting State Automobile's motion for summary judgment and denying Appellant Jett's motion for summary judgment, the trial court concluded the CGL policy is not an automobile liability or motor vehicle liability policy of insurance and therefore, UM/UIM coverage is not available. The trial court found the issue of whether Larry and Sandra Jett were insureds under the CGL policy moot based upon the finding that the policy was not a motor vehicle liability policy.
 {¶ 6} Appellant Jett timely filed a notice of appeal and sets forth the following assignment of error for our consideration:
 {¶ 7} "I. The trial court erred in granting the Appellee's Motion for Summary Judgment and in denying the Appellant's Motion for Summary Judgment, to Appellant's prejudice."
 "Summary Judgment Standard" {¶ 8} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 9} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review Appellant Jett's sole assignment of error.
 I {¶ 10} In his sole assignment of error, Appellant Jett maintains the trial court erred when it failed to conclude the CGL policy provides limited motor vehicle liability coverage and since UM/UIM coverage was not specifically rejected in the CGL policy, UM/UIM coverage is provided by operation of law. We disagree.
 {¶ 11} In support of this argument, appellant refers to the Ohio Supreme Court's decision in Selander, supra. In the Selander case, the Court found that a Fivestar General Business Liability Policy, which provided liability coverage for accidents involving "hired" or "non-owned" automobiles, qualified as an "automobile liability or motor vehicle policy", under R.C. 3937.18, and therefore, the policy was required to offer UM/UIM coverage. Id. at 546. However, since the policy did not offer such coverage, UM/UIM coverage arose by operation of law. Id.
 {¶ 12} Likewise, in the case sub judice, Appellant Jett contends the CGL policy is an automobile liability or motor vehicle policy because of exceptions to the exclusion of bodily injury liability coverage contained in said policy. Specifically, Appellant Jett refers to Section I of the policy which addresses "Coverages." In addition to addressing what damages and injuries are covered, this portion of the policy also addresses "Exclusions" and provides, in pertinent part:
"2. Exclusions
 {¶ 13} "This insurance does not apply to
 {¶ 14} "* * *
 {¶ 15} "g. Aircraft, Auto or Watercraft
 {¶ 16} "`Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and `loading or unloading'."
 {¶ 17} "This exclusion does not apply to:
 {¶ 18} "* * *
 {¶ 19} "(3) Parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured;
 {¶ 20} "* * *"
 {¶ 21} Appellant Jett also refers to Section II of the CGL policy which addresses "WHO IS AN INSURED." Subsection 3 of Section II provides that:
 {¶ 22} "3. With respect to `mobile equipment' registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability."
 {¶ 23} Appellant Jett maintains that pursuant to the Selander case, the above two sections of the CGL policy qualifies the policy as an automobile liability or motor vehicle policy under R.C. 3937.18 and State Automobile was required to offer UM/UIM coverage, which it did not do. Therefore, such coverage arises by operation of law.
In support of this argument, as it pertains to the "mobile equipment" provision, Appellant Jett cites our decision in Stacy v. Wausau Bus. Ins. Co. (June 13, 2000), Tuscarawas App. No. 2000AP010004. In Stacy, this court concluded, based upon the Selander decision, that because the policy of insurance included coverage for "[o]n premises or between premises use of golf carts or tractors," the policy qualified as a limited motor vehicle liability policy and therefore, Wausau should have offered UM/UIM coverage. Id. at 3. In reaching this conclusion, we specifically noted that the policy under consideration was issued on or before March 21, 1997, prior to the September 1997 amendment to R.C. 3937.18, and therefore, there is no controlling definition of a motor vehicle liability policy. Id. at 2.
 {¶ 24} On September 3, 1997, R.C. 3937.18 was amended by H.B. 261. This amendment added the following definition to the statute:
 {¶ 25} "(L) As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following:
 {¶ 26} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 27} "(2) Any umbrella liability policy of insurance."
 {¶ 28} Pursuant to R.C. 4509.01(K), "proof of financial responsibility" means:
"* * * [P]roof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident."
 {¶ 29} In the case sub judice, the CGL policy issued to Jett Roofing became effective on May 24, 1999. Therefore, R.C. 3937.18, as amended by H.B. 261, controls the rights and duties of the parties. Because our decision, in Stacy, was based upon the pre-H.B. 261 version of R.C. 3937.18, we conclude our decision, in Stacy, is inapplicable to the matter currently under consideration. We recently reached this same conclusion in the case of Pickett v. Ohio Farmers Ins. Co., Stark App. Nos. 2001CA00227; 2001CA00236, 2002-Ohio-259, which addressed whether a "mobile equipment" provision elevated a general liability policy into a motor vehicle liability policy.
Appellant Jett also relies upon this court's decision in Burkhart v. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903, which addressed both the "valet parking" provision and "mobile equipment" provision. In Burkhart, this court found the inclusion of a "valet parking" provision and "mobile equipment" provision elevated the general liability policy to a motor vehicle policy, concluding Selander and not Davidson applied. Burkhart at 9. The holding, in Burkhart, was also followed by this court in the case of Cox v. State Farm Fire and Cas. Co., Licking App. No. 2001CA00117, 2002-Ohio-3076. However, in Szekeres v. State Farm and Cas. Co., Licking App. No. 02CA00004, 2002-Ohio-5989, this court concluded that, "[u]pon revisiting the `valet parking' provision which is identical in the case sub judice, this writer concedes error in the Cox decision and adopts the reasoning set forth above." Szekeres at fn. 3.
 {¶ 30} Thus, in Szekeres, we held that:
 {¶ 31} "[T]he policy contains a `valet parking' provision. Per Davidson, such a provision is not truly a motor vehicle provision but a property damage provision. The provision does not pertain to any motor vehicle operation, but to coverage of the automobile body itself. We find to magnify this provision to the point that it would transform a general liability policy into a motor vehicle policy is to step beyond pale. * * * The general liability policy is not a motor vehicle policy and therefore is not covered by R.C. 3937.18." Id. at 4.
 {¶ 32} Accordingly, pursuant to our decision in the Szekeres and Pickett cases, we conclude the "valet parking" provision and "mobile equipment" provision contained in State Automobile's CGL policy does not transform this general liability policy into a motor vehicle liability policy. As did the trial court, we find that because the CGL policy is not a motor vehicle liability policy of insurance, the issue of whether appellants are insureds under the policy is moot.Appellant's sole assignment of error is overruled.
 {¶ 33} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Judgment affirmed.
Gwin, P.J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs assessed to appellant.