OPINION
{¶ 1} Appellant Federal Insurance Company ("Federal") appeals the decision of the Stark County Court of Common Pleas that denied its cross-motion for summary judgment and granted Appellee Nathan Heidt's motion for summary judgment. The following facts give rise to this appeal.
 {¶ 2} This lawsuit is the result of a one-car accident that occurred on June 14, 1996, in Lawrence Township. On this date, Heidt was a passenger in a vehicle that was driven and owned by Chad Keller. The accident occurred when the vehicle went off the road and struck a telephone pole. As a result of the accident, Heidt received serious personal injuries. Keller was uninsured at the time of the accident and Heidt has never filed an action against Keller as a result of the injuries he received in the accident.
 {¶ 3} However, on the date of the accident, Heidt was insured, under a motorcycle policy, issued by Progressive Insurance Company. On October 8, 1996, Heidt signed a release and trust agreement in favor of Progressive Insurance Company in exchange for $12,500. Also on the date of the accident, Heidt's father, John Heidt, was insured by Nationwide Insurance Company with a personal auto policy. Nationwide Insurance Company paid $100,000 in exchange for a release and trust agreement signed by Heidt on November 13, 1996.
 {¶ 4} Further, Heidt was employed by Machining Corporation of America on the date of the accident. Machining Corporation of America was insured by Federal. Federal issued both a Business Auto Policy and a Customary Series Quality Commercial Coverage Policy ("CGL policy") for the policy period of October 31, 1995 to October 31, 1996. On November 29, 2001, Heidt filed a complaint for declaratory judgment seeking UM/UIM coverage under the policies Federal issued to Machining Corporation of America.
 {¶ 5} On May 13, 2002, Heidt filed a motion for summary judgment. On July 15, 2002, Federal filed its own cross-motion for summary judgment and a brief in opposition to Heidt's motion for summary judgment. On August 22, 2002, the trial court issued its judgment entry granting Heidt's motion for summary judgment and denying Federal's cross-motion for summary judgment. Federal timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 6} "I. The trial court erred when it granted summary judgment to Heidt and denied federal's cross-motion for summary judgment thereby declaring that Heidt was entitled to um/uim coverage as an insured under the business auto policy in disregard of the `drive other car broadened coverage for named individuals' endorsement which distinguishes this case from Scott-Pontzer.
 {¶ 7} "II. The trial court erred when it granted summary judgment to Heidt and denied federal's cross-motion for summary judgment thereby declaring that the commercial liability coverage in federal (sic) package policy was an automobile insurance policy subject to r.c. § 3937.18
such that Heidt could avail himself of um/uim coverage imposed by operation of law.
 {¶ 8} "III. The trial court erred when it denied federal (sic) cross-motion for summary judgment and thereby determined that Heidt had not breached the notice and subrogation terms of federal's policies such that Heidt could avail himself of um/uim coverage.
 {¶ 9} "IV. The trial court erred in granting summary judgment to Heidt and denying federal's cross-motion for summary judgment without considering whether Heidt could avail himself of um/uim coverage where the (sic) Heidt was not legally entitled to recover from the tortfeasor."
"Summary Judgment Standard"
 {¶ 10} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 11} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 12} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review Federal's assignments of error.
 I {¶ 13} In its First Assignment of Error, Federal maintains the trial court erred when it determined Heidt was entitled to coverage as an insured, under the Business Auto policy, because the "Drive Other Car Broadened Coverage for Named Individuals" Endorsement removes theScott-Pontzer[1] ambiguity. We disagree.
 {¶ 14} In support of this assignment of error, Federal maintains its policy is distinguishable from the policy analyzed by the Supreme Court, in Scott-Pontzer, because Federal's policy does not limit protection solely to the corporate entity. The broadened coverage endorsement provides that Eric T. Bilinovich and Tonya E. Bilinovich are also insureds. Thus, Federal concludes that because these insureds can occupy an automobile, suffer bodily injury or death, and operate a motor vehicle, its auto policy is not ambiguous as it contains UM/UIM coverage which extends to individuals and not just a corporation.
 {¶ 15} In support of its argument, Federal cites the following cases from the Ninth District and Second District Courts of Appeals which held that the broadened coverage endorsement, naming individuals as insureds, negates the application of Scott-Pontzer. See, Thorne v.Amerisure Ins. Co., Summit App. No. 21137, 2002-Ohio-6123; WestfieldIns. Co. v. Galatis, Summit App. No. 20784, 2002-Ohio-1502; Skala v.Grange Ins. Co. Summit App. No. 20941, 2002-Ohio-5040; White v. Am. Mfg.Ins. Co., Montgomery App. No. 19206, 2002-Ohio-4125.
 {¶ 16} In response to Federal's argument, Heidt contends a question of material fact exists as to whether the broadened coverage endorsement was in effect on the date of the accident. Heidt claims Eric T. Bilinovich and Tonya E. Bilinovich were named insureds, only in the previous policy year, from October 31, 1994 to October 31, 1995, and that this endorsement was not included in the renewal of the Business Auto policy that went into effect on October 31, 1995.
 {¶ 17} We find it unnecessary to determine whether the broadened coverage endorsement was in effect, on the date of the accident, as we agree with the trial court's conclusion that such endorsement does not remove the Scott-Pontzer ambiguity. This court has specifically rejected Federal's argument in Still v. Indiana Ins. Co., Stark App. No. 2001CA00300, 2002-Ohio-1004, wherein we held:
 {¶ 18} "Upon reviewing the automobile policy in the instant case, we fail to find that the endorsement to the policy including these two individuals distinguishes this case from Scott-Pontzer * * * in that the ambiguity still exists, i.e. the policy still list[s] the corporation as the name[d] insured, thereby extending coverage to the corporation's employees." Id. at 3.
 {¶ 19} Accordingly, we conclude Heidt is an insured under Federal's Business Auto policy. Heidt also argues, in response to Federal's First Assignment of Error, that he is an insured under Federal's CGL policy. We will address this issue under Federal's Second Assignment of Error.
 {¶ 20} Federal's First Assignment of Error is overruled.
 II {¶ 21} In its Second Assignment of Error, Federal contends the trial court erred when it determined that its CGL policy was an automobile insurance policy subject to R.C. 3937.18 and that Heidt could avail himself of the UM/UIM coverage imposed by operation of law. We agree.
 {¶ 22} In its judgment entry, the trial court concluded the CGL policy issued by Federal provides coverage for a limited form of motor vehicles and therefore, UM coverage is implied by operation of law. Specifically, the trial court refers to the "valet parking" and "mobile equipment" provisions contained in the CGL policy. Judgment Entry, Aug. 22, 2002, at 4-5. In reaching this conclusion, the trial court relied upon the Ohio Supreme Court's decision in Selander v. Erie Ins. Grp.,85 Ohio St.3d 541, 1999-Ohio-287. In Selander, the Court held that "* * * where motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided." Id. at 542.
 {¶ 23} The language at issue in Federal's CGL policy provides as follows:
 "This insurance does not apply to bodily injury or property damage
arising out of the ownership, maintenance, use, operation, loading or unloading, or entrustment to others of any:
"* aircraft;
"* auto; or
"* watercraft
"which any insured owns, operates, rents, or borrows."
"This exclusion does not apply to:
"* * *
"C. parking an auto on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or theinsured;
"* * *
"E. bodily injury or property damage arising out of the operation of any of the equipment listed in paragraph F.2. or F.3. of the definition of mobile equipment; * * *" (Emphasis sic.)
The mobile equipment referred to above is defined as:
"* * *
"2. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
"3. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment."
 {¶ 24} On appeal, Federal maintains the trial court's decision ignores the recent case of Davidson v. Motorists Mut. Ins. Co.,91 Ohio St.3d 262, 2001-Ohio-36. In Davidson, a pre-H.B. 261[2] case, the Ohio Supreme Court held that a homeowner's insurance policy that provided limited liability coverage for vehicles that were not subject to motor vehicle registration and that were not intended to be used on a public highway was not a motor vehicle liability policy subject to statutory requirement to offer UM/UIM coverage. Id. at syllabus. The Court further explained that "* * * UM/UIM coverage is to be offered where a liability policy of insurance expressly provides for coverage for motor vehicles without qualification as to design or necessity for motor vehicle registration. Id. at 267.
 {¶ 25} Federal also cites this court's decision in Pickett v. OhioFarmers Ins. Co., Stark App. Nos. 2001CA00227, 2001CA00236,2002-Ohio-259. In Pickett, a post-H.B. 261 case, we held that a "mobile equipment" provision, contained in a general liability policy did not transform the policy into a motor vehicle liability policy under which UM/UIM coverage had to be offered. Id. at 3.
 {¶ 26} Finally, Federal cites this court's recent decision inSzekeres v. State Farm Fire Cas. Co., Licking App. No. 02CA00004,2002-Ohio-5989. In Szekeres, a pre-H.B. 261[3]case, we addressed the issue of whether a "valet parking" provision, in a general liability policy, transforms the policy into a motor vehicle policy under which UM/UIM coverage must be offered. In concluding that such a provision did not transform the policy into a motor vehicle policy, we held:
 {¶ 27} "As noted, the policy contains a `valet parking' provision. Per Davidson, such a provision is not truly a motor vehicle provision but a property damage provision. The provision does not pertain to any motor vehicle operation, but to coverage of the automobile body itself. We find to magnify this provision to the point that it would transform a general liability policy into a motor vehicle policy is to step beyond the pale. We have steadfastly rejected extension ofScott-Pontzer in other areas such as residence employee provisions in homeowner's policies * * * and we find this analysis to be of the same nature. The general liability policy is not a motor vehicle policy and therefore is not covered by R.C. 3937.18." Id. at 4.
 {¶ 28} In response, Appellee Heidt maintains the Ohio Supreme Court's decision in Selander, supra, and the pre-H.B. 261 version of R.C. 3937.18 apply to the case sub judice. The Selander case interpreted a pre-H.B. 261 version of R.C. 3937.18. In Selander, the CGL policy under consideration excluded coverage for liability arising from the use of automobiles, but provided coverage for claims arising from the use of non-owned or hired automobiles used in the insured's business. Id. at 543. The Court found that mandatory UM/UIM coverages under R.C. 3937.18
applied because the policy provided liability coverage for non-owned and hired motor vehicles. Id. at 546.
 {¶ 29} Although we agree with Appellee Heidt's argument that the pre-H.B. 261 version of R.C. 3937.18 applies, pursuant to our decision in Szekeres, we conclude Federal's CGL policy is not a motor vehicle liability policy which required the mandatory offering of UM/UIM coverage. Accordingly, such coverage does not arise, under the CGL policy, by operation of law. In Szekeres, this court explained that it was overruling its previous decision in Cox v. State Farm Fire and Cas. Co., Licking App. No. 2001CA00117, 2002-Ohio-3076, a pre-H.B. 261 case that held a CGL policy containing a "valet parking" provision was a motor vehicle liability policy thereby requiring the mandatory offering of UM/UIM coverage under R.C. 3937.18.
 {¶ 30} The Cox case relied upon this court's decision in Burkhartv. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903. In Burkhart[4], a pre-H.B. 261 case, we found that "valet parking" and "mobile equipment" provisions transformed a CGL policy into a motor vehicle policy which required the mandatory offering of UM/UIM coverage.
 {¶ 31} In overruling Cox, we explained, in Szekeres, that a "valet parking" provision is not a motor vehicle provision but a property damage provision. Id. at 4. Thus, Szekeres, a pre-H.B. 261 case, concluded the CGL policy was not a motor vehicle liability policy even though it contained a "valet parking" provision. Therefore, a "valet parking" provision does not transform a CGL policy into a motor vehicle liability policy under either the pre-H.B. 261 version of R.C. 3937.18 or the post-H.B. 261 version of R.C. 3937.18. The Ninth District Court of Appeals recently reached the same conclusion in Wiley v. Grange Mut. Cas. Co., Summit App. No. 21145, 2003-Ohio-539. The Court interpreted a "valet parking" provision, in a CGL policy, and held that, "[a]s a matter of law, the policy in question is not a motor vehicle liability policy pursuant to R.C. 3937.18 under either the pre September 3, 1997 version or the post H.B. 261 version effective on September 3, 1997." Id. at 3.
 {¶ 32} The "mobile equipment" provision was not specifically addressed in the Szekeres case. However, we conclude the "mobile equipment" provision also does not transform the CGL policy into a motor vehicle liability policy under the pre-H.B. 261 version of R.C. 3937.18. We have already reached this conclusion in analyzing post-H.B. 261 cases. See, Pickett, supra, and Jett v. State Auto. Mut. Ins. Co., Stark App. No. 2002CA00183, 2002-Ohio-7211. We have not addressed the issue as it pertains to pre-H.B. 261 cases. In analyzing this issue, we turn to the Ohio Supreme Court's recent decision in Hillyer v. State Farm Fire Cas. Co., 97 Ohio St.3d 411, 2002-Ohio-6662. In Hillyer, the Court addressed the issue of whether a residence-employee clause in an insurance policy that provided coverage incidental to home ownership converted the policy into a motor vehicle liability policy subject to the mandates of former R.C. 3937.18. The Court concluded that it did not. In reaching this conclusion, the Court first reviewed the language of the policy. Id. at 414. The mere title of the policy is not determinative because it is the type of coverage provided that determines the type of policy. Id., citing Selander, supra, at 545. Therefore, the contents of the policy must be reviewed to determine the type of coverage provided. Id.
 {¶ 33} The policy under consideration is a commercial general liability policy. It is not titled "motor vehicle liability" policy. The policy specifically excludes coverage for automobiles. However, the policy does make an exception to this exclusion and provides coverage for bodily injury or damages arising out of the operation of "mobile equipment." "Mobile equipment" includes: cherry pickers or similar devices mounted on automobile or truck chassis and used to raise or lower workers, air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.
 {¶ 34} In the case sub judice, the type of coverage provided is for bodily injury or property damage as a result of the use of "mobile equipment." As in Hillyer, the fact that an automobile or truck may be involved because a cherry picker is mounted to it is incidental to coverage. An insured is entitled to recover, not because an automobile or truck is involved, but because of the type of equipment attached to the automobile or truck. Further, the other "mobile equipment" defined in the policy clearly refers to a limited class of equipment not primarily designed to transport people on public roads.
 {¶ 35} Finally, the policy clearly provides, in Section F of the definition of "mobile equipment," that the equipment referred to in paragraphs F.2. and F.3. are not "mobile equipment" but are to be considered "autos." "Autos" are specifically excluded from coverage according to the bodily injury/property damage exclusions contained in the policy. Therefore, the "mobile equipment" provision does not convert the CGL policy into a motor vehicle liability policy requiring UM/UIM coverage to be offered. This policy was not intended to satisfy the statutory requirement of financial responsibility against liability arising from the ownership or operation of vehicles used for transportation on the highway. Therefore, Federal's CGL policy is not a motor vehicle liability policy under which UM/UIM coverage had to be offered and Appellee Heidt cannot avail himself of UM/UIM coverage under said policy.
 {¶ 36} Accordingly, Federal's Second Assignment of Error is sustained.
 III {¶ 37} In its Third Assignment of Error, Federal contends the trial court erred when it determined Appellee Heidt did not breach the notice and subrogation[5] terms of its policies. Pursuant to the Ohio Supreme Court's decision in Ferrando v. Auto-Owners Mut. Ins. Co.,98 Ohio St.3d 186, 2002-Ohio-7217, we conclude a question of material fact exists as to whether Federal received timely notice and if it did not receive timely notice, whether it was prejudiced by late notice.
 {¶ 38} In the matter currently before the court, the record indicates Federal did not receive notice of Appellee Heidt's claim until approximately four and one-half years after the accident occurred. Federal claims Appellee Heidt failed to satisfy a condition precedent to coverage and is therefore precluded from recovering UIM coverage. Federal's notice provision provides as follows:
"2. Duties in the event of accident, claim, suit or loss
"a. In the event of `accident,' `claim,' `suit' or `loss,' you must give us or our authorized representative prompt notice of the `accident' or `loss.' Include:
"(1) How, when and where the `accident' or `loss' occurred;
"(2) The `insured's' name and address; and
"(3) To the extent possible, the names and addresses of any injured persons and witnesses.
"b. Additionally, you and any other involved `insured' must:
"* * *
"(3) Cooperate with us in the investigation, settlement or defense of the claim or `suit.' "
 {¶ 39} Further, an endorsement to the Business Auto policy includes the following provisions:
"E. Changes in conditions
"Duties in the event of accident, claim, suit or loss is changed by adding the following:
"a. Promptly notify the police if a hit-and-run driver is involved, and
"b. Promptly send us copies of the legal papers if a `suit' is brought."
 {¶ 40} In the Ferrando case, the Ohio Supreme Court held that:
 {¶ 41} "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." Ferrando at paragraph one of the syllabus.
 {¶ 42} The Ferrando Court also articulated a two-step approach for determining whether the prompt notice and subrogation-related provisions were breached, and, if so, whether the breach resulted in prejudice to the extent that UIM coverage is then forfeited. "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice `within a reasonable time in light of all the surrounding facts and circumstances.' " Ruby v.Midwestern Indem. Co. (1988), 40 Ohio St.3d 159, syllabus. If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. Ferrando at 208. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Id. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut. Id.
 {¶ 43} Pursuant to Ferrando, we remand this matter to the trial court for the court to determine whether Appellee Heidt's notice to Federal was timely, as it pertains to the Business Auto policy, and if it was not timely, whether Federal was prejudiced by the untimely notice.
 {¶ 44} Accordingly, Federal's Third Assignment of Error is sustained.
 IV {¶ 45} In its Fourth Assignment of Error, Federal contends the trial court erred when it determined Appellee Heidt was entitled to UM/UIM coverage because Appellee Heidt was not legally entitled to such coverage as he failed to commence a lawsuit against the tortfeasor before the statute of limitations expired. We conclude a question of material facts exists as to whether Federal was prejudiced by Appellee Heidt's failure to file a lawsuit against the tortfeasor.
 {¶ 46} Federal's Business Auto Policy contains the following language concerning the protection of its subrogation rights.
 {¶ 47} "5. Transfer of rights of recovery against others to us
 {¶ 48} "If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after `accident' or `loss' to impair them."
 {¶ 49} Also, the Ohio UM/UIM coverage endorsement in the Federal Business Auto policy includes the following subrogation provisions:
"3. Transfer of rights of recovery against others to us is amended by adding the following:
"If we make any payment and the `insured' recovers from another party, the `insured' shall hold the proceeds in trust for us and pay us back the amount we have paid.
"Our rights do not apply under this provision with respect to Uninsured Motorists Coverage if we:
"a. Have been given prompt notice of a tentative settlement between an `insured' and the insurer of a vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle', and
"b. Fail to advance payment to the `insured' in an amount equal to the tentative settlement within 30 days after receipt of notification." (Emphasis sic.)
 {¶ 50} Based upon the above language, Federal maintains Heidt is not entitled to UM/UIM coverage because he never commenced an action against the tortfeasor within the applicable statute of limitations. Therefore, since Heidt is not legally entitled to recover from the tortfeasor, he is not entitled to UM/UIM coverage under Federal's Business Auto policy.
 {¶ 51} The Eighth District Court of Appeals recently addressed this argument in Panta, M.D. v. Cincinnati Ins. Co., Cuyahoga App. No. 81563, 2003-Ohio-762. The Panta case involved a plaintiff that failed to file suit against a tortfeasor within the applicable statute of limitations. Id. at 4. The defendant insurance company argued plaintiff's failure to file suit against the tortfeasor destroyed its subrogation rights and precluded UM/UIM coverage. Id.
 {¶ 52} The Eighth District Court of Appeal referred to the Ferrando decision which held:
 {¶ 53} "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary. Ferrando at paragraph two of the syllabus.
 {¶ 54} The Ferrando Court also stated:
 {¶ 55} "In cases involving the alleged breach of consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. If it was not, the inquiry is at an end, and UIM coverage must be provided. Also, if the insurer failed to respond within a reasonable time to a request for consent to the settlement offer, or unjustifiably withheld consent, the release will not preclude recovery under the UIM policy, and the subrogation clause will be disregarded. McDonald, paragraphs two and three of the syllabus; Fulmer, paragraph one of the syllabus. If the consent-to-settle or other subrogation-related clause was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut. Ferrando at 208.
 {¶ 56} In Panta, the Court concluded that plaintiff breached the subrogation provision because she failed to comply with the policy language to do everything necessary to secure the defendant insurance company's rights and nothing to impair them by not filing an action within the applicable statute of limitations. Id. at 5. The Eighth District Court of Appeals concluded that because the subrogation provision was breached, there is a presumption of prejudice to the insurer which the insured party bears the burden of presenting evidence to rebut. Id.
 {¶ 57} In the matter currently under consideration, we likewise find Appellee Heidt breached Federal's subrogation provision contained in its Business Auto policy by not filing a lawsuit against the tortfeasor within the applicable statute of limitations. Therefore, we must presume Federal was prejudiced by this breach. Accordingly, having found a presumption of prejudice, we remand this matter to the trial court for Appellee Heidt to present evidence to rebut this presumption of prejudice and the court to determine whether there is a genuine issue of fact as to whether Federal was prejudiced.
 {¶ 58} Federal's Fourth Assignment of Error is sustained.
 {¶ 59} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
By: Wise, P.J., Edwards, J., and Boggins, J., concur.
[1] 85 Ohio St.3d 660, 1999-Ohio-292.
[2] The post-H.B. 261 version of R.C. 3937.18, specifically, "R.C.3937.18(L)(1)[,] significantly narrows the scope of policies that must include uninsured and underinsured motorist coverage when compared with [the Ohio Supreme Court's] interpretation of the previous version of the statute." Bowles v. Utica Natl. Ins. Grp., Licking App. No. 02 CA 68, 2003-Ohio-254, citing Jump v. Nationwide Mut. Ins. Co., Montgomery App. No. 18880, 2001-Ohio-1699, appeal not allowed (2002),94 Ohio St.3d 1491.
[3] The pre-H.B. 261 version of R.C. 3937.18 addressing the mandatory offering of uninsured and underinsured motorist coverage provided as follows:
"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:
* * *
"(2) Underinsured motorist coverage, which shall be in the amount of coverage equivalent to the automobile and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
[4] The Burkhart decision is currently pending before the Ohio Supreme Court for a determination as to whether a "valet parking" provision transforms a policy into a motor vehicle liability policy. See Burkhartv. CNA Ins. Co., 96 Ohio St.3d 1438, 2002-Ohio-3344.
[5] We will address the issue of whether Appellee Heidt breached the subrogation terms of Federal's Business Auto policy in the Fourth Assignment of Error.