DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from judgments of the Lucas County Court of Common Pleas which granted summary judgment to Richard J. and Martha J. Wikstrom, Ohio Government Risk Management Plan ("OGRMP") and Indiana Insurance in a case seeking uninsured/underinsured ("UM/UIM") motorist benefits.
 {¶ 2} The undisputed facts of this case are as follows. On March 16, 2000, Matthew A. Hilton was driving in the southbound lane of Black Road in Lucas County, Ohio, when his vehicle crossed the center line and hit the vehicle driven by Richard Wikstrom. Immediately prior to the accident, an unidentified red SUV passed Wikstrom by entering the southbound lane of travel, forcing Hilton to take evasive action. Hilton swerved into the berm of the southbound lane, but in attempting to reenter that lane he crossed the center line and hit Wikstrom's vehicle. Both Wikstrom and Hilton were injured in the accident. In addition, Hilton has no memory of the accident or of the two weeks following the accident.
 {¶ 3} At the time of the accident, Hilton lived with his parents, Thomas and Kathleen Hilton, and with his sister, Nichole Hilton. Kathleen Hilton was employed by the village of Waterville. Waterville is a member of OGRMP, a joint self-insurance pool formed pursuant to R.C. 2744.081
and consisting of political subdivisions that join and pay yearly "premiums" for the coverages provided by the pool. Nichole Hilton was employed by the Whitehouse Inn, d/b/a Frog Toads, Inc. At the time of the accident, that organization maintained a commercial general liability policy of insurance, that included a business auto coverage form, with Indiana Insurance.
 {¶ 4} On September 27, 2000, Richard and Martha Wikstrom filed a complaint against Matthew Hilton and Motorists Mutual Insurance Company, Wikstrom's insurance carrier. The Wikstroms asserted claims against Hilton for negligence and loss of consortium and asserted a claim for uninsured/underinsured ("UM/UIM") motorist coverage against Motorists Mutual. Thereafter, Hilton filed an answer and counterclaim against Richard Wikstrom, asserting that he was injured due to Wikstrom's failure to exercise reasonable care in the operation of this motor vehicle. Hilton also filed a third party complaint for declaratory judgment against OGRMP and Indiana Insurance, seeking UM/UIM coverage pursuant to the Ohio Supreme Court's pronouncements in Scott-Pontzer v. Liberty Mut.Fire Ins. Co. (1999), 85 Ohio St.3d 660 and Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999), 86 Ohio St.3d 557.
 {¶ 5} Subsequently, a number of summary judgment motions were filed in the court below. Relevant to the present appeal, Wikstrom moved for summary judgment on Hilton's counterclaim for negligence, and OGRMP and Indiana Insurance moved for summary judgment on Hilton's third party complaint for declaratory judgment. On July 23, 2002, the trial court ruled on all pending summary judgment motions. In pertinent part, the court granted Wikstrom summary judgment on Hilton's counterclaim, and granted OGRMP and Indiana Insurance summary judgment on Hilton's third party complaints. With regard to the declaratory judgment actions, the court held that Hilton was not entitled to coverage under the OGRMP policy because he did not qualify as an insured and that Hilton was not entitled to UM/UIM coverage under the Indiana policy because that policy did not qualify as a "automobile liability or motor vehicle liability policy" and as such, coverage would not be imputed by operation of law. As to Wikstrom's summary judgment motion on Hilton's counterclaim, the court held that Wikstrom was entitled to judgment as a matter of law because there was no evidence that any negligence on the part of Wikstrom was a proximate cause of the accident.
 {¶ 6} From those judgments, Hilton filed an appeal, raising the following assignments of error:
 {¶ 7} "1. The trial court erred in granting Ohio Government Risk Management Plan's motion for summary judgment when it held that the Ohio Government Risk Management Plan's [sic] could unilaterally change the language of its policy within the first two years of its issuance so that the language as modified made Matthew Hilton not an insured under its policy.
 {¶ 8} "2. The trial court erred in granting Indiana Insurance Company's motion for summary when [sic] it held that the commercial general liability policy did not constitute automobile liability coverage so as to require compliance with R.C. 3937.18(A)(1) because it held that the use of the terms `hired' and `non-owned' automobiles to describe coverage in the policy did not `specifically identify' motor vehicles as required in R.C. 3037.18(L)(1) [sic].
 {¶ 9} "3. The trial court erred in granting plaintiffs'/appellees' motion for summary judgment when it decided factual issues, i.e. two allegations of the negligence of Richard J. Wikstrom, and held that Richard J. Wikstrom was not negligent."
 {¶ 10} In addition, third-party defendant-appellee/cross-appellant Indiana Insurance has filed a cross-appeal raising two assignments of error:
 {¶ 11} "I. The trial court's judgment should be affirmed because Indiana's policy is not governed by the Scott-Pontzer holdings because there is no ambiguity in the policy with regard to the definition of an `insured.'
 {¶ 12} "II. The trial court's judgment should be affirmed because appellant is not an insured under the Indiana policy."
 {¶ 13} In reviewing a trial court's ruling on a summary judgment motion, this court examines the case de novo. Conley-Slowinski v.Superior Spinning Stamping Co. (1998), 128 Ohio App.3d 360, 363. To prevail on a motion for summary judgment, the movant must demonstrate that there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The party moving for summary judgment under Civ.R. 56 bears the burden of showing that there is no genuine issue of material fact on the essential elements of the nonmoving party's claim.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. If the moving party satisfies this burden, the nonmoving party has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial. Id.
 The Indiana Policy {¶ 14} In his second assignment of error, Hilton challenges the trial court's order granting summary judgment to Indiana on Hilton's third party complaint for declaratory judgment. Indiana's assignments of error also raise questions regarding the trial court's order granting Indiana summary judgment. We will therefore address these assignments of error together.
 {¶ 15} The Indiana policy at issue provides numerous forms of coverage for Frog Toads, Inc., including commercial general liability with a business auto coverage form. Under that coverage, the policy provides that Indiana will pay "all sums an `insured' must pay as damages because of `bodily injury' or `property damage' to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of a covered `auto.'" The policy further defines the autos that are covered by the policy as follows: "ITEM TWO of the Declarations shows the `autos' that are covered `autos' for each of your coverages. The following numerical symbols describe the `autos' that may be covered `autos.' The symbols entered next to a coverage on the Declarations designate the only `autos' that are covered `autos.'" The policy then lists nine subsections of autos that are potentially covered by the policy and assigns a number, one through nine, to each subsection. On the declarations page of the business auto coverage form, the policy provides that those autos described in subsections eight and nine are covered by the policy. Subsection eight provides coverage for "HIRED `AUTOS' ONLY" and reads: "Only those `autos' you lease, hire, rent or borrow. This does not include any `auto' you lease, hire, rent or borrow from any of your `employees' or partners or members of their households." Subsection nine provides coverage for "NONOWNED `AUTOS' ONLY" and reads: "Only those `autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes `autos' owned by your `employees,' partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs."
 {¶ 16} It is well-established that "[f]or the purpose of determining the scope of coverage of [a UM/UIM] claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, syllabus. The Indiana insurance policy at issue herein was issued on November 8, 1999 with a policy period from November 26, 1999 to November 26, 2000. Accordingly, the outcome of this case is controlled by the version of R.C. 3937.18 that was enacted by Am.Sub.H.B. No. 261, effective September 3, 1997. That statute reads in relevant part: "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds: (1) Uninsured motorist coverage ***. (2) Underinsured motorist coverage ***." Where such coverage is not offered or rejected in accordance with law, it arises by operation of law. Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541,546.
 {¶ 17} It is undisputed that the Indiana policy at issue did not provide UM/UIM coverage. There is further no evidence in the record that such coverage was ever offered or rejected in accordance with law. Appellant therefore asserts that such coverage arose by operation of law and that he is entitled to UM/UIM coverage in an amount equal to the liability limits of the policy. Indiana counters that because the policy at issue does not qualify as an "automobile liability or motor vehicle liability policy of insurance" Indiana was not required to offer UM/UIM coverage and Indiana was entitled to judgment as a matter of law.
 {¶ 18} The version of R.C. 3937.18 that was in effect at the time the Indiana policy was entered into included a definition of "automobile liability or motor vehicle liability policy of insurance" under paragraph (L). That provision reads: "As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following: (1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance; (2) Any umbrella liability policy of insurance." Proof of financial responsibility is defined as "proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle ***." R.C. 4509.01(K). Accordingly, if a policy of insurance serves as proof of financial responsibility for owners or operators of motor vehicles specifically identified in the policy, it qualifies as an automobile liability or motor vehicle liability policy of insurance for which UM/UIM coverage must be offered.
 {¶ 19} In Burkholder v. German Mut. Ins. Co. (Mar. 15, 2002), Lucas App. No. L-01-1413, this court held that "the plain meaning of the words `specifically identified' as they are used in R.C. 3937.18(L)(1) is that the motor vehicles must be precisely, particularly and individually identified in order to meet the statutory definition." The Supreme Court of Ohio has affirmed this decision. See Burkholder v. German Mut. Ins.Co. (2003), 99 Ohio St.3d 163. Using this "plain meaning" of the words, several appellate districts have concluded that policies of insurance that generally exclude coverage for automobile accidents but do provide coverage for "hired" or "non-owned" automobiles do not specifically identify motor vehicles covered by the policy and therefore do not qualify as automobile liability or motor vehicle liability policies of insurance for purposes of R.C. 3937.18(A). Dancy v. Citizens Ins. Co., 5th Dist. No. 2002 AP 11 0086, 2003-Ohio-2858; Bowles v. Utica NationalIns. Group, 5th Dist. No. 02 CA 68, 2003-Ohio-254; Reffitt v. StateAuto. Mut. Ins. Co., 3d Dist. No. 1-02-38, 2002-Ohio-4885; Jump v.Nationwide Mut. Ins. Co. (Nov. 2, 2001), Montgomery App. No. 18880.
 {¶ 20} Hilton asserts that he is entitled to UM/UIM coverage under the Indiana policy by virtue of the Ohio Supreme Court's holding inSelander, supra. In Selander, the court construed "a general business liability policy that expressly provided insurance against liability arising out of the use of automobiles that were used and operated on public roads. Since there was express automobile liability coverage arising out of the use of these automobiles, [the court] reasoned that UM/UIM coverage was required." Davidson v. Motorists Mut. Ins. Co.
(2001), 91 Ohio St.3d 262, 267. Selander, however, construed a policy of insurance that was not subject to the Am.Sub.H.B. No. 261 amendments to R.C. 3937.18. Those amendments added subsection (L) which specifically defines "automobile liability or motor vehicle policy of insurance." That definition, as set forth and explained above, not the Selander
definition, applies to the policy in the present case.
 {¶ 21} We therefore conclude that the Indiana insurance policy at issue was not an automobile liability or motor vehicle policy of insurance and, therefore, Indiana was not required to offer UM/UIM coverage. Accordingly, such coverage did not arise by operation of law and the trial court did not err in granting Indiana summary judgment on Hilton's third party complaint for declaratory judgment. Hilton's assignment of error is not well-taken.
 {¶ 22} In light of our ruling on Hilton's assignment of error, we need not address the assignments of error raised by Indiana in its cross-appeal.
 The OGRMP Policy {¶ 23} In his first assignment of error, Hilton asserts that the trial court erred in granting OGRMP summary judgment on Hilton's third party complaint for declaratory judgment. In the proceedings below, Hilton sought UM/UIM coverage under the OGRMP policy. In particular, Hilton asserted that because the OGRMP policy provided UM/UIM coverage to his mother's employer, the village of Waterville, that coverage was extended to him pursuant to the Ohio Supreme Court's holding in Scott-Pontzer, supra and its progeny. The trial court disagreed, finding that Hilton was not an insured under the policy. For the following reasons, we agree with the trial court.
 {¶ 24} The village of Waterville joined OGRMP in 1989. On July 1, 1999, those entities entered into a two-year policy of insurance with an effective date of July 1, 1999 to July 1, 2001. That policy included UM/UIM coverage under form OGRMP0204(10/94) which defined "who is an insured" as follows: "1. You. 2. If you are an individual, any `family member.' 3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction. 4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'" It is undisputed that under this definition, Hilton would be an insured under the policy pursuant to Scott-Pontzer and Ezawa, supra. The policy also provided, however, under the heading "Common Policy Conditions:" "This policy contains all the agreements between you and us concerning the insurance afforded. *** This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy."
 {¶ 25} Subsequent to the Ohio Supreme Court's decision inScott-Pontzer, OGRMP issued an endorsement, effective December 1, 1999, which amended the UM/UIM coverage under the policy. In pertinent part, the endorsement changed the definition of "who is an insured" to read: "2. For `bodily injury' coverage as defined in Section A of this coverage part: a. The officers, agents or employees of the named insured, as identified on the declarations page, while driving an `auto' in the course and scope of their employment for the named insured, whether or not the `auto' is owned by the named insured. b. Anyone else `occupying' an `auto' owned or leased by the named insured, as identified on the declarations page of this policy, or temporary substitute for an `auto' owned or leased by the named insured. When coverage is extended to any temporary substitute for an `auto' owned or leased by the named insured, the owned or leased `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction. c. Any other individual who is entitled to recover damages because of `bodily injury' sustained by another `person insured' for `bodily injury' coverages, as defined in this coverage part."
 {¶ 26} Hilton contends that pursuant to the Ohio Supreme Court's decision in Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, this endorsement was not effective in amending the definition of who is an insured under the OGRMP policy and, as such, he still qualifies as an insured under the policy pursuant to Scott-Pontzer and Ezawa. In Wolfe, at paragraph one of the syllabus, the court held that "[p]ursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39." Hilton asserts that because the endorsement changing the definition of who is insured under the UM/UIM provisions of the policy was added to the policy during a two-year policy period, it is invalid. For the following reasons, however, we conclude that R.C. 3937.31(A) and Wolfe do not apply to the OGRMP policy.
 {¶ 27} It is undisputed that OGRMP is a self-insurance pool formed pursuant to R.C. 2744.081. R.C. 2744.081(E)(2) reads: "A joint self-insurance pool is not an insurance company. Its operation does not constitute doing an insurance business and is not subject to the insurance laws of this state." R.C. 3937.31(A), which sets forth the requirement that every automobile insurance policy issued in Ohio have a policy period of no less than two years, is an insurance law of this state. Accordingly, it does not apply to the OGRMP policy. See Caton v.Bd. of Commissioners of Muskingum Cty., 5th Dist. No. CT2002-0038,2003-Ohio-2292, and Public Entities Pool of Ohio v. Sexton (Mar. 21, 2000), Montgomery App. No. 17849 (both holding that a joint self-insurance pool created pursuant to R.C. 2744.081 is exempt from the requirements of R.C. 3937.18(A)). As such, and pursuant to the terms of the OGRMP policy, the endorsement changing the definition of "who is an insured" is valid and enforceable. Under that definition, Hilton was not an insured under the OGRMP policy and was not entitled to UM/UIM coverage.
 {¶ 28} Accordingly, the trial court did not err in granting OGRMP summary judgment on Hilton's third party complaint for declaratory judgment and Hilton's first assignment of error is not well-taken.
 Wikstrom {¶ 29} In his third and final assignment of error, Hilton asserts that the trial court erred in granting Wikstrom summary judgment on Hilton's counterclaim for negligence. In the proceedings below, Hilton asserted that Wikstrom was negligent in causing the accident because he failed to use reasonable care to avoid the accident when Hilton came into his lane and because he drove at such a slow speed as to impede or block the normal and reasonable movement of traffic in violation of R.C. 4511.22.
 {¶ 30} "It is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." Menifee v. Ohio WeldingProducts, Inc. (1984), 15 Ohio St.3d 75, 77.
 {¶ 31} Hilton first asserts that Wikstrom had a duty to avoid appellant once he became aware of appellant's perilous situation and that Wikstrom's violation of this duty was a proximate cause of the accident. In raising this issue, Hilton asserts that under the doctrine of "last clear chance," Wikstrom's failure to take evasive action once Hilton entered his lane of travel proximately caused the accident.
 {¶ 32} We first note that the doctrine of "last clear chance" is a nullity in Ohio since the Ohio General Assembly adopted the comparative negligence statute, R.C. 2315.19. Mitchell v. Ross (1984),14 Ohio App.3d 75, 77-78; Higgins v. Bennett (Mar. 6, 2000), Clinton App. No. CA99-08-022. Notwithstanding the invalidity of this doctrine, there is no evidence in the record that Wikstrom violated any duty to Hilton upon discovering Hilton's perilous situation. Wikstrom testified that upon seeing Hilton enter his lane, he slammed on his brakes with both feet. He estimated the time between seeing Hilton enter his lane and the collision to be two to three seconds. Wikstrom further testified that he did not have time to do anything else. Hilton has no memory of the accident and did not counter Wikstrom's evidence with any evidence establishing that Wikstrom violated any duty owed to him.
 {¶ 33} Hilton further asserts that Wikstrom violated R.C. 4511.22, that Wikstrom's violation of this statute was negligence per se, and that such violation caused the red SUV to pass Wikstrom's vehicle setting in motion the events which caused the accident. R.C. 4511.22 prohibits a driver from operating a vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic. Wikstrom testified at his deposition that immediately prior to the accident he was traveling at between 30 and 40 miles per hour because he was carrying shelving material in the back of his truck. The speed limit on Black Road at the location of the accident is 55 m.p.h. Assuming as we must for summary judgment purposes that Wikstrom did violate this statute, there is nothing in the record to indicate that Wikstrom's slow speed caused Hilton to lose control of his car and cross the center line. That is, there is no evidence to indicate that Wikstrom's speed was a proximate cause of the accident. Wikstrom testified that Hilton lost control of his car after he tried to return to the pavement from the berm. Accordingly, Hilton's inability to control his vehicle was in no way caused by or affected by Wikstrom's speed. Hilton did not counter this testimony with any evidence suggesting that Wikstrom's speed was a proximate cause of the accident.
 {¶ 34} The trial court therefore did not err in granting Wikstrom summary judgment on Hilton's counterclaim, and the third assignment of error is not well-taken.
 {¶ 35} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgments of the Lucas County Court of Common Pleas are affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.