JOURNAL ENTRY AND OPINION
{¶ 1} This is a consolidated appeal from orders of Judge Shirley Saffold that granted appellee Universal Underwriters Insurance Company's ("UUIC") motion for summary judgment on the automobile liability claims of appellants Jeffrey, Katherine, and Michael Lorince, and granted summary judgment against appellant Cincinnati Insurance Comapny ("CIC") on the Lorinces' underinsured motorist claims. The Lorinces contend that UUIC provides liability coverage for a customer operating a loaner car owned by its insured, Preston Ford, when that person's vehicle is undergoing repairs. CIC asserts that its policy language excludes the Lorinces from UIM coverage and that Westfield Ins. Co. v.Galatis[1] precludes coverage. We affirm summary judgment for UUIC, albeit for different reasons, and reverse summary judgment against CIC and enter judgment for CIC.
 {¶ 2} From the record we glean the following: Harold Johnson owned a truck that was insured under a Nationwide Insurance Company policy, and appears to have been the principal transportation of Christopher Loucks, Johnson's stepson. On June 4, 2002, the truck went in for service at the Preston Ford dealership in Burton. Although there is a dispute over whether Johnson or Loucks left the truck at the dealership, Preston Ford provided one of them the keys to a 1994 Taurus as a temporary substitute automobile, a "loaner," at no charge.
 {¶ 3} On June 16th, while Loucks was driving the Taurus, and Jeffrey Lorince, Loucks' sixteen-year-old cousin, was a rear seat passenger, he lost control, struck a guardrail and, as a result, Jeffrey lost his left leg. Nationwide provided its liability policy limits of $100,000 to the Lorinces.[2]
 {¶ 4} The Lorinces contended that Loucks was also a liability insured under the Preston Ford UUIC policy with primary limits of $500,000 and an umbrella policy with limits of $6,000,000. Michael Lorince was employed by Cleveland Construction Inc. ("Cleveland"), and the family asserted Scott-Pontzer[3]
underinsured motorist claims under Cleveland's CIC policy with primary limits of $1,000,000 and an umbrella of $10,000,000.
 {¶ 5} The Lorinces brought a declaratory judgment action against the two carriers and, eventually, all moved for summary judgment. The judge found that the CIC policy contained ambiguities identified in Scott-Pontzer and found UIM coverage for the Lorince family under the primary policy but noted a validLinko[4] rejection of UIM coverage under the umbrella policy. She also found that Loucks was not an insured under either the UUIC primary or umbrella policy and, furthermore, that it was not required to offer UIM coverage.[5]
 {¶ 6} The assignments of error of CIC and the Lorinces are set forth in the appendix to this opinion.
 {¶ 7} ". THE CIC POLICY
 {¶ 8} CIC contends that the Lorinces are not UIM insureds under its policy. The Lorinces agree that subsequent to receiving summary judgment in their favor, the Ohio Supreme Court inWestfield Ins. Co. v. Galatis, supra, limited the holding inScott-Pontzer, and they "no longer have a good faith argument to present" and concede the issue. CIC's assignment of error has merit.
 {¶ 9} "I. UUIC POLICY
 {¶ 10} The Lorinces argue that Loucks is a liability insured under the UUIC policy. They contend an exception to an exclusion from coverage is directed toward providing liability coverage for the permissive drivers of Preston Ford's cars. They claim that the judge misapplied the holding in Bob-Boyd Lincoln Mercury v.Hyatt[6] that had interpreted older UUIC policy provisions, because the omnibus insurance clause addressed in that case was not an issue below. They further submit that the plain language of the umbrella policy provides Loucks with additional liability insurance.
 {¶ 11} UUIC's Part 500 liability coverage: UUIC promises to pay "all sums the INSURED legally must pay as damages * * * because of injury to which this insurance applies caused by an OCCURRENCE arising out of * * * [an] AUTO HAZARD."[7]
 {¶ 12} UUIC's Part 500 defines an INSURED for injuries arising out of an AUTO HAZARD:
{¶ 13} "WHO IS AN INSURED
 {¶ 14} "1) YOU, (all named insureds)
 {¶ 15} "2) * * *
 {¶ 16} "3) CONTRACT DRIVER;
 {¶ 17} "4) Any other person or organization required by law tobe an INSURED while using an AUTO covered by this Coverage Partwithin the scope of YOUR permission."
 {¶ 18} One must note, however, the General Provisions of the UUIC UNICOVER policy may supercede the terms of all its multiple coverages of which Part 500 is but one.
{¶ 19} "CONFORMING TO LAW — If any part of this policy is inconflict with local, state or federal law, those provisions inconflict will automatically change to conform to thelaw. * * *."[8]
 {¶ 20} The Ohio Revised Code Chapter on motor vehicle financial responsibility[9] provides in part:
{¶ 21} "Proof of financial responsibility" means proof ofability to respond in damages for liability, on account ofaccident occurring subsequent to the effective date of suchproof, arising out of the ownership, maintenance, or use of amotor vehicle in the amount of twelve thousand five hundreddollars because of bodily injury or death to one person in anyone accident, in the amount of twenty-five thousand dollarsbecause of bodily injury or death of two or more persons in anyone accident, and the amount of seven thousand five hundreddollars because of injury to property of others in any oneaccident."[10]
 {¶ 22} Part 500 of UUIC's Unicover policy identifies Preston Ford's covered autos as "any motor vehicle owned or in the care or control of a named insured and, among uses, furnished for the use of any person or organization."[11]
 {¶ 23} The judge's application of the holding in Bob-BoydLincoln Mercury v. Hyatt, supra, to UUIC's Preston Ford policy was inappropriate. She failed to take into consideration the changes in Ohio law that have occurred over the twenty-one years since the claim against Hyatt arose in 1983.
 {¶ 24} Bob-Boyd let Hyatt test drive one of its cars overnight and he caused a collision with one operated by Larry Stephens. Progressive, Hyatt's automobile liability insurance carrier, paid Stephen's property damage and the bodily injury and medical expenses claim of his passenger. UUIC, Bob-Boyd's insurance carrier, paid for Bob-Boyd's property damage, less a deductible, and Bob-Boyd and UUIC brought suit against Hyatt and Progressive who, in turn, filed a counterclaim, cross-claim, and third-party complaint.
 {¶ 25} The Ohio Supreme Court, in a per curiam opinion,[12] relied upon its decision in Moyer v.Aron,[13] involving its interpretation of a 1958 UUIC policy where liability coverage was in dispute for a customer who test drove a dealer's car and struck and killed a child on a bicycle.[14] That UUIC policy had a provision that stated:
{¶ 26} "8. Financial Responsibility Laws — Coverages A and B:When this policy is certified as proof of financialresponsibility for the future under the provisions of themotor vehicle financial responsibility law of any state * * *such insurance as is afforded by this policy * * * shall complywith the provisions of such law * * *." (Emphasis added.)
 {¶ 27} Moreover, a policy endorsement expressly limited the definition of a liability "insured" to only a specific number of persons and did not include business customers.
{¶ 28} "A person is not an insured under an automobileinsurance policy unless such person is defined as an insured bythe terms of the policy, except where such policy has been"certified" under the provisions of Section 4509.46, RevisedCode, and thereby the definition of who is an "insured" under thepolicy has been modified to conform to the provisions of thestatute (Section 4509.51, Revised Code.)"[15]
 {¶ 29} Certification anticipates potential liability from the guarantee of broader coverage than provided by the underlying automobile liability insurance because, even if the certified driver violates any terms and conditions of the policy, the carrier must provide liability coverage for him until appropriate notice intention to cancel is rendered to the bureau.[16]
 {¶ 30} The Moyer opinion concluded that Ohio did not require a person to purchase an "owner's policy" of insurance except under circumstances set forth in then R.C.4509.31.[17] Finding that there was no showing that the UUIC policy was "certified"[18] which, by operation of law, specifically identified drivers with liability coverage, the Court found no ambiguity between R.C. 4509.01 and R.C.4509.51[19] and denied liability coverage to the customer.
 {¶ 31} The "certification" of a motor vehicle liability policy, as explained in Globe Mutual Casualty Co. v. Teague,
supra, is a separate and distinct act from the issuing of such a policy, although incidental thereto.
{¶ 32} "Financial responsibility does not and cannot beattached to a named automobile. People, named persons, who mustprovide proof of financial responsibility are the subject ofcertification to the bureau by insurance carriers."[20]
 {¶ 33} Certification, therefore, is an insurance carrier's guarantee that a person, without restriction, will be provided with applicable personal injury and property damage liability coverage through a motor vehicle liability policy.
 {¶ 34} The Bob-Boyd opinion again relied upon the fact that Ohio "did not require a person to purchase an `owner's policy' of insurance meeting the requirements of R.C. 4509.51
* * *."[21] It did note, however, that R.C. 4509.101, enacted in 1984 and not applicable to the period of Hyatt's collision, could require that a customer using a dealer's car be a liability insured as a matter of law.[22]
 {¶ 35} R.C. 4509.101 was intended to attach financial responsibility to the operation of a motor vehicle and provided in part:
 {¶ 36} "A(1) No person shall operate, or permit theoperation of, a motor vehicle in this state, unless proof offinancial responsibility is maintained continuously through theregistration period with respect to that vehicle, or, in thecase of a driver who is not the owner, with respect to thatdriver's operation of that vehicle.
 {¶ 37} "* *
 {¶ 38} "J) The purpose of this section is to require themaintenance of proof of financial responsibility with respect tothe operation of motor vehicles on the highways of this state, soas to minimize those situations in which persons are notcompensated for injuries and damages sustained in motor vehicleaccidents. * * *." (Emphasis added.)
 {¶ 39} Proof of financial responsibility under the statute can be demonstrated by, among others, a liability insurance policy, a declaration page of a liability insurance policy, or a financial responsibility identification card.
 {¶ 40} R.C. 4905.103 mandates that:
{¶ 41} "(A) Each insurer writing motor vehicle liabilityinsurance in this state shall provide financial responsibilityidentification cards to every policy holder in this state to whomit has delivered or issued for delivery a motor vehicle liabilityinsurance policy. A minimum of one financial responsibilityidentification card shall be issued for every motor vehicleinsured under a motor vehicle liability policy." (Emphasisadded.)
 {¶ 42} Moreover, R.C. 4509.49 mandates that every motor vehicle
 {¶ 43} liability policy:
 {¶ 44} "* * * shall contain an agreement or be endorsedthat insurance is provided in accordance with the coveragedefined in sections 4509.01 to 4509.78, inclusive, of the RevisedCode, with respect to bodily injury and death or property damage,or both, and is subject to such sections."
 {¶ 45} Clearly, as a result of the piecemeal repeal and amendments to Chapter 4509 of the Ohio Revised Code over twenty plus years, the holding and dicta of Bob-Boyd and its progeny can no longer deny liability coverage to a customer operating a Preston Ford loner car insured by UUIC's policy.
 {¶ 46} The Court in Bob-Boyd stated that in 1983, Chapter 4509:
 {¶ 47} "* * * embodies a `one bite' approach to achievingthis purpose [protecting the public from financiallyirresponsible motorists] by permitting motorists the privilege ofdriving without any proof of financial responsibility until theyincur an accident related judgment and fail to satisfy it within30 days."[23]
 {¶ 48} The enactment and amendments of R.C. 4509.101, 103, and 104 make it clear that the legislature no longer permits a motor vehicle to be operated in Ohio unless its owner/permissive operator is then financially responsible for accident related claims. The owner's liability policy is innately obligatory and the insurance follows the car.[24]
 {¶ 49} An accident is no longer a condition precedent to requiring proof of financial responsibility. An applicant for registration of a motor vehicle or driver's license or renewal must sign a statement that he maintains, or has maintained on his behalf, proof of financial responsibility and will not operate a motor vehicle in this state unless he maintains, or has maintained on his behalf, proof of financial responsibility.[25]
 {¶ 50} If found guilty for violation of a traffic offense that requires a court appearance, the person must verify the existence, at the time of the offense, of proof of financial responsibility covering the person's operation of the motor vehicle. During an investigation into a violation of traffic laws or during a motor vehicle inspection, a person must produce proof of maintenance of financial responsibility or he will be ticketed by the law enforcement officer.[26] Such failure to provide the proof results in suspension of one's license.
 {¶ 51} If a vehicle owner, randomly selected, receives notice from the Registrar to submit proof of financial responsibility and fails to so respond, that person's license is suspended and his certificate of registration and license plates are impounded.[27]
 {¶ 52} Clearly, the legislature did not limit proof of financial responsibility to only certified owner's or operator's liability insurance when it defined "Motor-vehicle liability policy,"[28] because in subsequent enactments and amendments it uses the terms "insurance identification card", "policy of insurance" and "declaration page of such policy," all of which are not certified under R.C. 4509.46 as proof of financial responsibility.
 {¶ 53} Additionally, there are no means by which the Preston Ford UUIC policy could be certified for a short term renter/lessee or bailee because they are strangers to UUIC, and could not be identified to the Registrar in advance. That UUIC has no intention of suffering any liability losses because of certification is clear from its policy provision intended to avoid the situation encountered in Globe Mutual Casualty Co. v.Teague, supra, where the court found that Ohio law required that a certified policy provide financial responsibility to an identified person regardless of the conditions of any underlying insurance policy. A General Provision provides:
{¶ 54} "FINANCIAL RESPONSIBILITY LAWS — A state motor vehiclelaw may require an INSURED to prove future financialresponsibility. If WE certify this policy as providing suchproof, that INSURED must repay US for any payments We would nothave to pay without certification."[29]
 {¶ 55} Therefore, any certified insured under this UUIC policy is a potential debtor.
 {¶ 56} Under R.C. 4509.101, Preston Ford cannot permit a customer to operate a loaner vehicle — one that is neither rented or leased — unless it maintains proof of financial responsibility on it in order for that customer to be encompassed by that financial responsibility.[30] It does provide liability coverage for its vehicles, and UUIC cannot exclude such permissive users as insureds, based upon outdated precedent, when by its own definition of who is an insured, such persons are:
{¶ 57} "(4) Any other person or organization required by lawto be an INSURED while using an AUTO covered by this CoveragePart within the scope of YOUR permission."
 {¶ 58} That a permissive user and a short term car lessee or renter is a liability insured under the UUIC policy becomes an inescapable conclusion when the policy further provides that there is no liability coverage for the use of any Preston Ford auto:
{¶ 59} "(iii) leased or rented by YOU to others except to:
 {¶ 60} (2) YOUR customers for a term of two months when ittemporarily replaces the CUSTOMER'S AUTO, or when the customer isawaiting delivery of any auto purchased from YOU."[31]
 {¶ 61} This provision's only point of reference is that of definition (4) of WHO IS AN INSURED, because no other description is applicable. Therefore, if a short term lessee or renter is an Auto Hazard, WHO IS AN INSURED part (4) insured, a customer using a "loaner" car must also be a part (4) insured because the arrangement is a type of bailment or a: "Commodation, Where goods or chattels that are useful are lent to the bailee gratis, to be used by him."[32] Now a customer entrusted with a Preston Ford "loaner" and using it within the scope of its permission must, under Ohio law, come under the policy definition of "an Insured" and no certification is necessary for the liability coverage to apply.
 {¶ 62} Because there is nothing within part 500 that excludes a customer operating a "loaner" from coverage, he is a (4) insured "any other person," using Preston Ford's vehicle with its express or implied permission. Therefore, he is an insured within the policy definition and, even if not so described, he would become an insured by operation of law.[33]
 {¶ 63} Although the Declarations Page of the UUIC policy provides a $500,000 per occurrence in liability coverage, policy language controls how much of that coverage will be provided for various policy insureds:
{¶ 64} "THE MOST WE WILL PAY — Regardless of the number ofINSUREDS or AUTOS insured or premiums charged by this CoveragePart, person or organizations who sustain INJURY * * * claimsmade or SUITS brought, the most WE will pay is:
 {¶ 65} "1) * * *
 {¶ 66} With respect to the AUTO HAZARD part (4) of WHO IS ANINSURED,[34] the most WE will pay is that portion of such limit needed to comply with the minimum limits provision law in the jurisdiction where the occurrence took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted."[35]
 {¶ 67} Under UUIC's Part 500 motor vehicle liability policy, therefore, whether Loucks or Johnson were given the keys and the permission to use the Taurus, each would have been entitled to only $12,500 in coverage,[36] but only in the event no other applicable liability insurance was available. Because Nationwide had provided Loucks with $100,000 in liability coverage, which it paid to the Lorinces, UUIC has no obligation, under its liability coverage, to make any payment through its Preston Ford policy. Whether Loucks had permission to use the Taurus becomes moot.
 {¶ 68} Similarly, under the Part 980, Umbrella, there is no liability coverage for Loucks because neither he nor Johnson qualify as an insured:
 {¶ 69} "WHO IS AN INSURED — * * *
 {¶ 70} With respect to any AUTO or watercraft:
 {¶ 71} "a) YOU (the named insureds)
 {¶ 72} With respect to (1) any AUTO or watercraft used in YOURbusiness or (2) personal use of any AUTO owned or hired by YOU:
 {¶ 73} "a) any person or organization shown in thedeclarations for this Coverage Part as a "Designated Person".(Pat and Diane Preston)"[37]
 {¶ 74} The Lorinces assignments of error lack merit. Judgment affirmed in part, reversed in part and judgment entered for CIC.
 APPENDIX LORINCES' ASSIGNMENTS OF ERROR:
 I. THE TRIAL COURT ERRED BY DENYING APPELLANTS' MOTION FORSUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT IN FAVOR OFUNIVERSAL UNDERWRITER'S INSURANCE COMPANY.
 A. APPELLANT'S MOTION FOR SUMMARY JUDGMENT SHOULD HAVE BEENGRANTED BECAUSE THE PLAIN LANGUAGE OF THE UNIVERSAL UNDERWRITER'SINSURANCE COMPANY INSURANCE POLICY PROVIDED THAT THE TORTFEASORIS AN INSURED UNDER COVERAGE PART 500.
 1. The trial Court Incorrectly Relied on the Cases ofBob-Boyd Lincoln Mercury v. Hyatt, (1987), 32 Ohio St.3d 300and Stoner v. Ricart Ford (Fifth District, 2002 WL 173524,Because the Omnibus Clause of The Insurance Contract Is Not AtIssue.
 B. APPELLANT'S MOTION FOR SUMMARY JUDGMENT SHOULD HAVE BEENGRANTED BECAUSE THE PLAIN LANGUAGE OF THE UNIVERSAL UNDERWRITER'SINSURANCE COMPANY INSURANCE POLICY PROVIDED THAT THE TORTFEASORIS AN INSURED UNDER COVERAGE PART 980.
 CIC'S ASSIGNMENT OF ERROR:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN APPLYING THESCOTT-PONZER AND EZAWA DECISIONS TO A COMMERCIAL AUTOCONTRACT OF INSURANCE WHERE THE CLAIMANTS WERE NOT IN A COVEREDAUTO AND WERE NOT EMPLOYEES IN THE COURSE AND SCOPE OF EMPLOYMENTAT THE TIME THE ACCIDENT OCCURRED.
It is ordered that the parties bear their own costs herein taxed. This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sean C. Gallagher, J., Concurs in judgment only.
Ann Dyke, J., Concurs in part and concurs in judgment only inpart (see separate opinion attached).
(Judge Anne L. Kilbane wrote and signed this Journal and Opinion prior to her death on November 22, 2004)
[1] 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.
[2] Who had the express or implied consent of UUIC and CIC to accept.
[3] Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116.
[4] Linko v. Indemnity Ins. Co. of N. Am., 90 Ohio St.3d 445,2000-Ohio-92, 739 N.E.2d 338.
[5] The Lorince family did not claim UIM coverage under the UUIC policy.
[6] (1987) 32 Ohio St.3d 300, 513 N.E.2d. 331.
[7] General Conditions Policy at page 5: * * * a word written in capital letters means it has a specific meaning as defined in each coverage part.
[8] Policy at page 8.
[9] R.C. 4509 et.seq.
[10] R.C. 4905.01(K).
[11] Policy at page 40.
[12] The opinion was written by a Court Staff Attorney.
[13] (1964) 175 Ohio St. 490, 196 N.E.2d 454.
[14] Travelers Insurance Company, the customer's carrier provided him with a defense and his policy limits of $10,000 to satisfy the judgment of $15,000. The parents sought the $5,000 from UUIC in a supplemental petition.
[15] Moyer, 175 Ohio St. 490, 196 N.E.2d 454, paragraph two of the syllabus.
[16] Globe Mutual Casualty Co. v. Teague, 14 Ohio App.2d 186,192-193, 237 N.E.2d 614, 618-619.
[17] Repealed 149 S 123.
[18] Certification required that the insurance carrier had to provide to the Registrar of Motor Vehicles a guarantee that there is in effect a motor-vehicle liability policy for the benefit of the person to furnish proof of financial responsibility for no less than one year and, if no term was specified, it could not be cancelled without adequate notice to the Registrar.
[19] It requires an owner's liability insurance policy to insure all permissive drivers.
[20] Teague, 14 Ohio App.2d 186 at 194, 237 N.E.2d 614 at 619.
[21] 32 Ohio St.3d 300 at 303-304.
[22] Id. at 305.
[23] 32 Ohio St.3d 300 at 303, quoting Duffey v. Dollison
(C.A. 6, 1984), 734 F.2d 265.
[24] Ohio Farmers Ins. Co. v. Ohio Casualty Ins. Co. (1971),28 Ohio App.2d 170, 174, 275 N.E.2d 877, 880, citing Ohio Supreme Court cases.
[25] RC. 4503.20(B) and (F) and 4507.212(B) and E.
[26] R.C. 4507.99(J), 4509.06 and 4509.101(A)(3).
[27] R.C. 4509.101(A)(3)(c).
[28] R.C. 4509.01(L).
[29] Policy at page 6.
[30] R.C. 4509.101(A)(1).
[31] Policy at page 44, Exclusion (i)(1)(iii).
[32] Black's Law Dictionary, (4 Ed.Rev. 1968) 179.
[33] Selander v. Erie Insurance Group, 85 Ohio St.3d 541,546, 1999-Ohio-287, 709 N.E.2d 1161, 1165; R.C. 4509.49.
[34] "Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission." Policy at page 42.
[35] Policy at pages 45-46.
[36] R.C. 4509.01(K).
[37] Policy at page 78.
 CONCURRING OPINION