DECISION. *Page 2 
{¶ 1} As with many automobile liability insurance cases, this dispute is over the definition of "insured." And also as with many cases, two insurance companies are fighting. Plaintiff-appellant GEICO General Insurance Company appeals the entry of summary judgment for defendant-appellee State Farm Mutual Automobile Insurance Company. We affirm.
 I. Two Policies Collide {¶ 2} In June 2006, Robert Browning let his son's 17-year-old stepdaughter, Kathryn Thornton, drive his Cadillac. Thornton rammed into the back of Michele Woods's minivan. The collision injured Woods and damaged her minivan. Fortunately, Browning was a responsible car owner and had insured his car under a policy from State Farm. And Thornton came from a responsible family; she was covered under a family policy purchased from GEICO (the policy was sold to Thornton's mother, with whom she lived). With two potential insurers, which would defend and indemnify Thornton?
 {¶ 3} State Farm denied coverage, relying on its policy's definition of an insured. The definition purported to exclude permissive users who, like Thornton, were insured under another policy:
 {¶ 4} "WHO IS AN INSURED
 {¶ 5} "* * *
 {¶ 6} "4. any other person who is not insured for vehicle liability coverage by any other insurance policy, a self-insurance program, or a liability bond while using such a car. The use of such car must be within the scope of consent of you or your spouse * * *."
 {¶ 7} When State Farm denied coverage, GEICO paid. Predictably, GEICO thought this unfair and sued. GEICO claimed the definition in State Farm's policy violated Ohio's Financial Responsibility Act, so it asked the trial court to declare the *Page 3 
exclusion unenforceable. Specifically, GEICO argued that R.C. 4509.51, which requires an "owner's policy" to cover all permissive users, applies to all policies issued to vehicle owners.
 {¶ 8} State Farm argued that RC. 4509.51 applies only to policies sold to vehicle owners who have committed certain traffic violations or who have been caught driving without proof of financial responsibility. These high-risk drivers must buy policies with more stringent requirements; that is, a policy that is "certified" under R.C. 4509.44
through 4509.65. State Farm concluded that because the policy here was not certified, it was not required to cover permissive users. On cross-motions for summary judgment, the trial court ruled for State Farm. It held that R.C. 4509.51 applies only to certified policies. GEICO now appeals.
 II. Assignment of Error and Standard of Review {¶ 9} In GEICO's assignment of error, it argues that the trial court erred by entering summary judgment for State Farm (and by denying summary judgment to GEICO). GEICO repackages the argument it presented to the trial court — RC. 4509.51 applies to all policies issued to vehicle owners. State Farm continues to maintain that this statute only applies to certified policies.
 {¶ 10} We review a trial court's entry of summary judgment de novo, a non-deferential standard.[1] The question is whether Ohio's Financial Responsibility Act requires that all liability insurance policies cover permissive users.
 III. A New and Improved Act? {¶ 11} In 1964, the Ohio Supreme Court made a distinction within the Financial Responsibility Act between a standard liability policy and a certified policy.[2] And though *Page 4 
the Act had been revised and reworded, the court reaffirmed this distinction in 1984.[3] Through many more changes to the Act, Ohio's appellate courts have repeatedly done the same.[4] We most recently reaffirmed the distinction in Cincinnati Ins. Co. v. Kramer[5] which we decided in 1993. But the Act was again modified in 1995. GEICO argues that the 1995 changes superseded the Kramer decision and altered the face of Ohio's financial responsibility law by obliterating the distinction between standard liability policies and certified policies.
 {¶ 12} Specifically, GEICO argues that when the General Assembly added RC. 4509.103 and 4509.104 to the Act, it intended to require all owners and operators wishing to satisfy the Act's requirement of liability insurance to purchase a policy as defined by R.C. 4509.44 through4509.65. That would mean, among other things, that every policy sold to a vehicle owner would have to cover permissive users.
 {¶ 13} The two statutes enacted in 1995 do not even mention owners or operators. They only impose formal duties on insurers: insurers writing certain types of policies must issue financial responsibility ID. cards to their insured;[6] and if an automobile insurance policy does not satisfy R.C. 4509.101 and 4509.01(K), then insurers must put a warning to that effect in the policy.[7] GEICO argues that the General Assembly sought to overhaul the entire act with these revisions. We are not persuaded. If the General Assembly had sought to overhaul the rights and responsibilities of every vehicle owner and operator, surely it would have chosen a more direct method. A review of Ohio's Financial Responsibility Act shows why we continue to adhere to theKramer reasoning. *Page 5 
 IV. An Improper Citation {¶ 14} Before we move on, we pause to address a case relied on by GEICO. GEICO repeatedly cites an Eighth Appellate District case that is not citable law. In Lorince v. Universal Underwriters, [8] the court of appeals adopted the statutory construction advanced by GEICO.[9] Then the Ohio Supreme Court accepted Lorince for review, [10] but it later dismissed the appeal as being improvidently allowed.[11] In dismissing the appeal, the court also ordered that "the opinion of the court of appeals may not be cited as authority except by the parties inter se."[12] Despite this prohibition, GEICO's brief is replete with citations to Lorince. Because Lorince has no precedential value, persuasive or otherwise, we ignore it and caution counsel against future reliance on it — especially when counsel has failed to disclose the Ohio Supreme Court's prohibition against citing it.
 V. An Introduction to Ohio's Financial ResponsibilityAct {¶ 15} Ohio's Financial Responsibility Act[13] works like a Rube Goldberg machine, bringing about by complicated means what could have been accomplished simply.[14] Like a kaleidoscope of alphabet soup, the Act — through an enigmatic chain of references and cross-references — defines and redefines the duties of vehicle owners, operators, and insurance companies. And inevitably, the judicial construction, reconstruction, and instruction that follow a poorly drafted act overlay another level.
 {¶ 16} Doing our best to understand these provisions, we believe a two-tier system emerges.
 {¶ 17} In the first instance, all owners and operators must maintain some form of proof of financial responsibility that satisfies RC. 4509.01(K). Owners or operators *Page 6 
must also be ready to verify that they are satisfying this requirement. But once a person has violated this general duty, the Act then demands that owners and operators file "certified" proof of financial responsibility with the Bureau of Motor Vehicles ("BMV"). (Though the Act consistently refers to a singular "registrar," we recognize that oversight responsibility lies collectively with the BMV.) Only five kinds of documents will satisfy this filing requirement. For liability insurance to satisfy this heightened requirement, it must be certified. A more detailed exposition follows.
 VI. Tier One: The General Requirement {¶ 18} R.C. 4509.101(A)(1) requires persons operating or permitting others to operate a motor vehicle to maintain "proof of financial responsibility." This requirement applies to all owners and operators. The proof required is "[p]roof of ability to respond in damages for liability * * * arising out of the ownership, maintenance, or use of a motor vehicle in the amount of [$12,500] because of bodily injury to or death in any one accident * * * [, $25,000] because of bodily injury to or death of two or more persons in any one accident * * * [, and $7,500] because of injury to property of others in any one accident. "[15]
Financial responsibility can be proved by a policy of liability insurance, a bond, a certificate of deposit, or a certificate of self-insurance. Of course, the insurance requirements are laughably inadequate; does the legislature really think that the life or limb of any Ohioan is worth only $12,500?
 VII. Enforcement — Verification Penalties {¶ 19} Not all vehicle owners and operators must verify that they are maintaining proof of financial responsibility. Only under three circumstances must proof of financial responsibility be verified: (1) after a traffic accident requiring an accident report, [16] (2) at the request of a peace officer or state highway patrol trooper *Page 7 
after a person receives a traffic ticket, [17] and (3) when a person is randomly selected by the BMV to verify proof of financial responsibility.[18]
 {¶ 20} In the first two circumstances requiring that a person verify proof of financial responsibility, the statute lists six favored methods of verification.[19] But it also provides a catchall provision that grants the BMV or the trial court discretion to accept other evidence as verification.[20] For the third, the random-selection process, the rules are established solely by the BMV. In any event, the statutes do not define what must be verified, only how it is to be verified. The "what" remains the same — "proof of financial responsibility" as defined in R.C. 4509.01(K).
 {¶ 21} Failure to verify proof of financial responsibility triggers certain civil penalties.[21] The BMV will suspend a person's driver's license, and if the person owns the vehicle, the BMV will impound the vehicle's registration.[22] To have operating privileges or registration rights reinstated, a person must satisfy three conditions: (1) the person must pay a reinstatement fee;[23] (2) if the person did not voluntarily comply with the suspension order, a "nonvoluntary compliance fee must be paid";[24] and (3) the person must file and continuously maintain certified proof of financial responsibility under R.C. 4509.44 through 4509.65.[25] This third requirement, the filing of certified proof of financial responsibility, triggers a heightened requirement for violators.
 VIII. Tier Two: A Heightened Requirement for Previous Offenders {¶ 22} Those who have previously failed to verify proof of financial responsibility must prove financial responsibility differently to have driving privileges *Page 8 
reinstated. The details of this heightened requirement are in R.C. 4509.44 through 4509.65. The primary requirement is that a person must file with the BMV one of five specific documents.[26] The list of what will satisfy the filing requirement is almost identical to the preferred means of verification listed in R.C. 4509.101. (Though we call it a "heightened" requirement, the only effect of the heightening is furnishing a certified policy and filing documents — the insurance limit requirements stay the same.) But the differences, especially as they relate to liability insurance, are noteworthy.
 {¶ 23} These differences reveal the effect that this heightened requirement has on violators. First, R.C. 4509.45 dispenses with any discretion previously granted to the BMV or the trial court; only those documents listed in R.C. 4509.45 will satisfy the filing requirement. For liability insurance, the major difference is certification: a declarations page of an insurance policy is sufficient to verify proof of financial responsibility under the first tier, [27] but to satisfy this heightened filing requirement, the policy must be certified under RC. 4509.46 or 4509.47.[28] The need for a certified policy is triggered no other way.
 {¶ 24} Certified policies have to provide coverage that satisfies either RC. 4509.51 (for an owner's policy) or RC. 4509.52 (for an operator's policy). Since the typical owner does not need a certified policy, the typical policy does not need to meet the terms of RC. 4509.51, which includes the requirement that a policy cover all permissive users.[29] Said otherwise, owners' policies not subject to the heightened requirement of RC. 4509.45 need not insure permissive users. This reading is in line with long-standing Ohio Supreme Court precedent[30] and with more current decisions from Ohio appellate courts.[31] *Page 9 
 {¶ 25} Moreover, a recent change in a neighboring chapter of the Revised Code supports our reasoning. In 2002, the General Assembly added this to R.C. 4510.16(a): "no person shall operate a motor vehicle within this state * * * during the period in which the person is required by section 4509.45 of the revised code to file and maintain proof of financial responsibility for a violation of section 4509.101 * * * ."[32] Consistent with our analysis, this 2002 revision shows that the General Assembly continues to see the Act as having a two-tier framework: a first tier for the typical owner or operator and a second tier (requiring a certified policy) for those who have been caught violating the general mandate.
 IX. Judgment Affirmed {¶ 26} If the General Assembly had wanted to make all owners buy certified policies, it certainly could have imposed that obligation. But it did not. As it now stands, an owner who has not previously violated the Act complies by having a policy that satisfies R.C. 4509.01(K). Nothing in the record of this case indicates that Browning needed to meet the heightened second-tier requirement. So the policy that State Farm sold to him did not need to cover all permissive users. Thus the challenged definition, which disqualifies permissive users who are otherwise insured, does not violate the Act. Accordingly, we affirm the trial court's judgment.
Judgment affirmed.
SUNDERMANN, P.J., and HENDON, J., concur.
[1] Comer v. Risko, 106 Ohio St.3d 185, 2005-Ohio-4559,833 N.E.2d 712, at ¶ 8.
[2] Moyer v. Aaron (1964), 175 Ohio St. 490, 196 N.E.2d 454, paragraph two of the syllabus.
[3] Bob-Boyd Lincoln Mercury v. Hyatt (1987), 32 Ohio St.3d 300, 302,513 N.E.2d 331.
[4] Safe Auto Ins. Co. v. Koromo, 169 Ohio App.3d 747, 2006-Ohio-6742,864 N.E.2d 703, at ¶ 17, citing Cincinnati Ins. Co. v. Kramer (1993),91 Ohio App.3d 528, 632 N.E.2d 1333.
[5] Kramer, 91 Ohio App.3d 528.
[6] R.C. 4509.103.
[7] R.C. 4509.104.
[8] 8th Dist. No. 83711, 2004-Ohio-6287.
[9] Id. at ¶¶ 61-62.
[10] 105 Ohio St.3d 1559, 2005-Ohio-2447, 828 N.E.2d 115.
[11] 108 Ohio St.3d 1217, 2006-Ohio-1193, 843 N.E.2d 1212.
[12] Id. at ¶ 2.
[13] R.C. 4509.
[14] The American Heritage Dictionary of the English Language (4 Ed. 2000) 1520.
[15] R.C. 45099.01(K).
[16] R.C. 4509.101(A)(3)(a).
[17] R.C. 4509.101(A)(3)(b).
[18] R.C. 4509.101(A)(3)(c).
[19] R.C. 4509.101(G)(1).
[20] R.C. 4509.101(G)(2).
[21] R.C. 4509.101(A)(2).
[22] R.C. 4509.101(A)(2)(a) through 4509.101(A)(2)(d).
[23] R.C. 4509.101(A)(5)(a).
[24] R.C. 4509.101(A)(5)(b).
[25] R.C. 4509.101(A)(5)(c).
[26] R.C. 4509.44 and 4509.45.
[27] R.C. 4509.101(G)(1)(c).
[28] R.C. 4509.45(A)(2).
[29] R.C. 4509.51(B).
[30] Bob-Boyd Lincoln Mercury v. Hyatt (1987), 32 Ohio St.3d 300, 302,513 N.E.2d 331.
[31] Koromo, 169 Ohio App.3d 747, 2006-Ohio-6742, 864 N.E.2d 703, at ¶ 17, citing Cincinnati Ins. Co. v. Kramer (1993), 91 Ohio App.3d 528,632 N.E.2d 1333.
[32] Emphasis added. *Page 1